UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Mayday Health and Nancy Turbak Berry, | ) ) ) | |
| Plaintiffs, | ) ) | Civ. 26-4096 |
| v. | ) ) | |
| Governor Larry Rhoden and Attorney General Marty Jackley, sued in their official capacities, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**Complaint for Preliminary and Permanent Injunction
<u>and for Declaratory Relief</u>**

## Nature of this Case

Plaintiffs seek pre-enforcement injunctive relief barring defendants from enforcing South Dakota House Bill 1274 (2026) against them on three grounds. First, it is unconstitutional and violates the Communications Decency Act as applied to Mayday Health; second, it is unconstitutional as applied to Nancy Turbak Berry; and third, its "advertise" prohibition is unconstitutional on its face.

## Parties

1.      Mayday Health is a 501(c)(3) reproductive health education nonprofit. Raisner Declaration ¶ 1.

2.      Nancy Turbak Berry ("Turbak") is a South Dakota attorney.  Turbak Declaration ¶ 1.

3.      Larry Rhoden and Marty Jackley are the Governor and Attorney General of South Dakota, and are responsible for enforcing HB 1274.  Plaintiffs sue them in their official capacities.

## Jurisdiction

4.      This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Declaratory relief is sought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court has jurisdiction under 28 U.S.C. § 1331.

**Facts**

**Mayday's purpose and activity**

5.      Mayday was founded in May 2022, in the wake of *Dobbs v. Jackson Women's Health Organization*, to respond to widespread confusion, fear, and misinformation. Mayday shares accurate information about the safety, legality, and availability of abortion pills, so that women can make informed decisions about their own bodies.    Mayday owns and operates a globally-accessible website, https://mayday.health.  Raisner Declaration ¶¶ 1 and 2.

6.      Mayday provides information free of charge so that women can, if they choose, terminate pregnancies safely even though they live in places like South Dakota that limit or outlaw abortion.  Raisner Declaration ¶¶ 3 to 6.

7.      Mayday does not sell, handle, provide, offer for sale, or distribute any medications.  Nor does it provide any medical or legal advice, charge any fee, collect any revenue related to providing medical or legal services, obtain any other valuable consideration in exchange for disseminating information, benefit from the sale of abortion medication, have any customers, or monetize the data of people who use its website.  Raisner Declaration ¶ 5.

8.      Mayday sells merchandise containing information about abortion pills to  support  its  mission  to  provide  such  information.   Merchandise  currently available is at https://maydayhealth-shop.fourthwall.com/.

9.      On December 8, 2025, Mayday placed signs "Pregnant? Don't want to be?"  and "Learn More at Mayday.Health" in South Dakota, one of which follows.



Raisner Declaration ¶ 7.

**The State sues Mayday, alleges that Mayday's speech is criminal, seeks civil penalties, and threatens criminal prosecution under a variety of theories**

10.     Two days after Mayday placed its signs, Attorney General Jackley wrote Mayday, stating he "demands that you **IMMEDIATELY CEASE AND DESIST** from conducting any advertising related to the delivery of abortion drugs to the State of South Dakota."  He alleged that Mayday "may face felony criminal consequences or civil penalties up to $5,000 per violation."  Raisner Declaration ¶ 9.

11.     Mayday responded, defending its First Amendment right to "make important, and truthful, public information available."  Raisner Declaration ¶ 11.

12.     On December 22, the State moved for a preliminary and permanent injunction against Mayday.  Raisner Declaration ¶ 12.

13.     The State alleged that Mayday's "advertisements" included "a plethora of deceptive acts and practices, false pretense[s], false promises, or misrepresentations, and the concealment, suppression, or omission of material facts in connection with the advertisement of abortion-inducing pills and abortion services; the sale of abortion related merchandise; and in the solicitation of contributions for charitable purposes, in violation of S.D.C.L. 37-24-6."  Raisner Declaration Exhibit 4 at 2.

14.     The State claimed that Mayday's "advisements" and other speech were "illegal"—a claim it repeated *eleven* times.  Raisner Declaration Exhibit 4.

15.     The State alleged that Mayday is part of a group of "bad actors who are knowingly advertising illegal services."  Raisner Declaration Exhibit 4 at 18.

16.     In support of its motion, the State filed an Affidavit of Jeff Kollars, a Supervisory Special Agent for the South Dakota Division of Criminal Investigation, that describes  Mayday's allegedly "illegal advertising."  Raisner Declaration ¶ 14.

**Mayday sues the State—and the State continues to allege that Mayday's speech is criminal, and continues to threaten criminal prosecution**

17.     On January 6, 2026, Mayday sued Attorney General Jackley, in his official capacity, in the United States District Court for the Southern District of New York, for injunctive and declaratory relief, alleging that all its speech is lawful. Raisner Declaration ¶ 16, Exhibit 7.

18.     At the temporary restraining order hearing on January 16, 2026, Attorney General Jackley told the court: "I would advise the Court, as [a] former United States attorney and attorney general, solicitation is a criminal act in South Dakota[.]"  Raisner Declaration ¶ 20, Exhibit 8 at 9.

19.     Jackley made clear that Mayday's advertisements, which he also called "placards," were criminal solicitation:

> Q.     THE COURT: . . . You mentioned the signs.  These are the signs in the gas stations, sir, and not just the website?
>
> A.     MR. JACKLEY: Yes.  I would call them a placard. When you go to a gas station, there will be a placard above the pump, or as part of the pump, that contains an advertisement.  So those placards exist here in South Dakota.
>
> *       *       *       *       *       *       *       *
>
> Q.     THE COURT: Just so that I am clear, it's not the existence of the website per se, it's these placards that you're construing as solicitation, or am I getting ahead of myself?
>
> A.     MR. JACKLEY: That is our position, your Honor. You are not getting ahead of yourself.  That is our position.

Raisner Declaration Exhibit 8 at 9-10.

20.     Attorney General Jackley's brief continued and expanded his allegations of Mayday criminality.  He told the court that Mayday's speech "proposes an illegal transaction or is in furtherance of a criminal scheme," so it

"receives no [First Amendment] protection." Raisner Declaration Exhibit 9 at 3. He argued the State sought to "shut[] down advertising for an illegal transaction[.]" Raisner Declaration Exhibit 9 at 4. He wrote that his "cease-and-desist letter placed Mayday on notice that it is perpetrating unlawful acts and practices with respect to illegal pill transactions and illegally false, deceptive and misleading advertisements under South Dakota's civil and criminal laws." Raisner Declaration Exhibit 9 at 5. He wrote that Mayday's "placards" "advertis[e] illegal transactions." *Id.* He wrote that Mayday was engaged in "facilitating illegal transactions and illegal misrepresentations." Raisner Declaration Exhibit 9 at 6. He wrote that "Mayday [was] advertising on behalf of the pill merchants." Raisner Declaration Exhibit 9 at 8.

21.    Likewise, in the state court case, Jackley told the court that "Mayday continues to advertise for companies that ship illegal abortion pills into South Dakota in contravention of its laws." Raisner Declaration Exhibit 10 at 3.

22.    At the federal court preliminary injunction hearing in federal court on January 29, Attorney General Jackley asserted a number of theories under which Mayday's speech was criminal, including representations about his own personal beliefs ("in my mind" and "I can assure you"):

- "It's clearly a solicitation of a crime." Raisner Declaration Exhibit 11 at 40.

- "In my mind as a chief law enforcement officer of the state, it is an absolute criminal violation." Raisner Declaration Exhibit 11 at 41

- "Aid Access or Buzz can't put a placard up in South Dakota to sell these illegal drugs. So Mayday can't do it for them. When you look at the law of solicitation, it's indirect or direct. They fit the criminal statute." Raisner Declaration Exhibit 11 at 42.

- "[I]t's inducing and commencing criminal activity." Raisner Declaration Exhibit 11 at 42.

- "I can assure you, there's a statute in South Dakota that says what they're pedaling is not legal." Raisner Declaration Exhibit 11 at 44.

- "They are selling abortion pills." Raisner Declaration Exhibit 11 at 57.

- "[T]hey're selling a product." Raisner Declaration Exhibit 11at 58.

- "They are selling a product."  Raisner Declaration Exhibit 11 at 60.

- "Mayday is soliciting, inducing, commencing the illegal trafficking of pills in the State of South Dakota.  There's hard evidence of that."  Raisner Declaration Exhibit 11 at 62.

23.    In a complaint filed in state court on February 18, the State continued its criminal allegations against Mayday.  The State alleged that Mayday was "advertising and soliciting the sale [of] illegal abortion pills within the physical borders of the state of South Dakota" (Raisner Declaration Exhibit 12 ¶ 1); that Mayday was "advertising and soliciting abortions for teenaged children without the required parental notification" (Raisner Declaration Exhibit 12 ¶ 4); that Mayday "advertises and solicits the sale of illegal abortion pills" (Raisner Declaration Exhibit 12 ¶¶ 44, 46, 50); and that Mayday engages in an "illegal advertising campaign." (Raisner Declaration Exhibit 12 ¶ 53).

24.    In the same complaint, the State alleged that Mayday "sells merchandise on its website" with "similar messaging" about the availability of abortion pills "in all 50 states," and provided this photograph as an example:

10



"THEY DON'T WANT YOU TO KNOW THIS" CREAM CREWNECK

$35.00

One of our most loved crewnecks! It features air-jet spun yarn which acts like fabric softener to reduce creases and piling for a crisp yet relaxed look.

- 50% cotton, 50% polyester
- Midweight fabric (8.0 oz)
- Regular fit
- Unisex sizing

Select size   Size guide

| S | M | L | XL | 2XL | 3XL |

Raisner Declaration Exhibit 12 ¶ 28.

**The federal court states that Mayday is correct that the First Amendment protects its speech, and dismisses based on *Younger* abstention**

25.    The federal court dismissed Mayday's case based on *Younger v. Harris*, 401 U.S. 37 (1971), abstention, and ruled that but for *Younger*, it would find that Mayday's speech is protected by the First Amendment.  Raisner Declaration ¶ 24.

26.    The district court stated:

- "I do believe that the proper way to view Mayday's website and

    the materials on it is noncommercial speech subject to protection

under the First Amendment." Raisner Declaration Exhibit 13 at 14.

- "[A]bsent Younger abstention, this Court would be granting plaintiff's motion for injunctive relief." Raisner Declaration Exhibit 13 at 15. "My read—what the materials I have before me suggest that Mayday's website contains, under what I will call the NIFLA [*National Institute of Family and Life Advocates v. James*, 160 F.4th 360 (2d Cir. 2025)] case, noncommercial speech. It is speech that is based on moral beliefs with no economic motivation. The plaintiff does not charge the patrons of the website or the service providers for referrals and the fact that the website solicits donations does not transform its contents into commercial speech[.]" Raisner Declaration Exhibit 13 at 15-16.

- "I also do not believe that the website solicits or abets acts that are illegal under South Dakota law." Raisner Declaration Exhibit 13 at 16.

- "[I]f I had jurisdiction, which I don't believe I do, I think the South Dakota statute would be subject to strict scrutiny analysis

and we would see whether it was narrowly tailored to serve a compelling state interest under NIFLA, [and] the answer would probably be no." Raisner Declaration Exhibit 13 at 16-17.

**The state and federal lawsuits settle**

27.   On March 5, the parties agreed to mutually dismiss their dueling lawsuits. Mayday agreed that it "will ensure the removal of the Gas Station Placards and will terminate its campaign to place additional Gas Station Placards throughout South Dakota" and that it "will not place, either directly or indirectly through third-party actions, any signs, posters, placards, billboards, or other physical media within the physical borders of South Dakota that aid, abet, or solicit illegal conduct as established by law." Mayday maintains that all its speech is protected by the First Amendment. Raisner Declaration Exhibit 14 at 2.

**The Legislature strikes back, targeting Mayday with HB 1274**

28.   On March 9, the South Dakota Senate passed House Bill 1274 as amended.   On March 10, the House of Representatives concurred in the amendments. On March 12, the bill was delivered to the Governor, and on March 30, he signed it at a press conference. https://sdlegislature.gov/Session/Bill/26881 (last visited May 28, 2026).

29.    HB 1274 as enacted is Raisner Declaration Exhibit 15.

30.    The legislative proceedings that led to the enactment of HB 1274 show that it targets Mayday.  Raisner Declaration Exhibits 16 to 19, and Memorandum in Support of Motion for Preliminary Injunction, Section V.

31.    When Governor Rhoden signed HB 1274, he issued a press release explicitly referring to the Mayday litigation, and accusing Mayday of engaging in illegal conduct.  It states: "In his State of the State Address, Governor Rhoden highlighted the fact that the biggest threat to unborn lives in South Dakota is the illegal shipment of abortion pills into the state.  Governor Rhoden previously worked with Attorney General Marty Jackley to stop illegal advertisements of these pills; now HB 1274 allows the Attorney General to actually prosecute the shipment of pills for purposes of an unlawful abortion."  Raisner Declaration Exhibit 20.

**HB 1274, as the Legislature intends it be applied to Mayday, and as defendants intend to apply it, deters Mayday's constitutionally protected speech about abortion**

32.    The State's ceaseless threats of criminal prosecution against Mayday even before HB 1274, the enactment of HB 1274 with felony penalties, HB 1274's change from "pregnant female" to "person," and the Legislature's, the Attorney General's and the Governor's intention to enforce HB 1274 against Mayday chill

14

Mayday's lawful speech and credibly threaten Mayday with future prosecution for engaging in First Amendment protected speech.

33.    Unless this Court intervenes, Mayday will be deterred from engaging in lawful speech that is protected by the First Amendment.

**HB 1274, as the Legislature intends it be applied, and as defendants intend to apply it, deters Turbak's constitutionally protected speech about abortion**

34.    Nancy Turbak owns a Mayday sweatshirt:



Turbak Declaration ¶ 2.

35.    Her sweatshirt—just like the "Pregnant? Don't want to be?" gas station signs—provides information about abortion.

36.    In the state litigation described above, the State's Complaint alleged that Mayday's sale of this sweatshirt was a crime.  Raisner Declaration Exhibit 12 ¶ 28

15

(including photograph of sweatshirt), and ¶ 24 of this Complaint (also with photograph).

37.    The State's unending threats of criminal prosecution against Mayday even before HB 1274, the enactment of HB 1274 with felony penalties, HB 1274's change from "pregnant female" to "person" at the Attorney General's request, and the Governor's promise to enforce HB 1274 have chilled Turbak's lawful speech and credibly threaten Turbak with future prosecution for engaging in First Amendment protected speech.  Turbak Declaration ¶ 3 to 5.

38.    Unless this court grants relief, Turbak will be deterred from wearing the sweatshirt, and thereby deterred from engaging in lawsuit First Amendment-protected speech.  Turbak Declaration ¶ 5.

### First Cause of Action—First Amendment— <br> HB 1274 in its entirety is unconstitutional as applied to Mayday and Turbak

39.    All paragraphs above are incorporated herein by this reference.

40.    House Bill 1274, as the Legislature intends it be applied to Mayday, and as defendants intend to apply it to Mayday and Turbak, violates the First Amendment.

## Second Cause of Action—First Amendment—
## HB 1274's "advertise" prohibition is unconstitutional on its face

41.    All paragraphs above are incorporated herein by this reference.

42.    Mayday's speech and Turbak's proposed speech are an "advertisement" within the meaning of HB 1274.

43.    The "advertise" prohibition of House Bill 1274 is unconstitutional on its face because it prohibits or chills a substantial amount of protected speech. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).

## Third Cause of Action—Section 230—
## HB 1274 as applied to Mayday violates the Communications Decency Act

44.    All paragraphs above are incorporated by this reference.

45.    Mayday provides interactive computer services through its website, https://mayday.health.

46.    Mayday's website provides links to other internet content providers.

47.    The vast majority of the State's allegations against Mayday—excepting Mayday's gas station signs "Pregnant?  Don't want to be?"—are based on statements made *not* by Mayday, but by other information content providers on third-party websites to which Mayday's website links.

17

48.    In the State's lawsuit against Mayday, the State filed four documents complaining about information on third-party websites that Mayday's website links to:

a.    State's Motion for Preliminary and Permanent Injunction (Raisner Declaration Exhibit 4 at 6 to 11);

b.    State's Affidavit of Jeff Kollars (Raisner Declaration Exhibit 5 at 2 ¶ 6);

c.    State's Affidavit of Kayla Klemann (Raisner Declaration Exhibit 6 at 2 ¶ 9 to 6 ¶ 29); and

d.    State's Complaint for Injunctive and Declaratory Relief (Raisner Declaration Exhibit 12 at 3 ¶ 18 to 7 ¶ 39.

49.    The State's allegations treat Mayday as the publisher of the content on the third-party websites, which is prohibited by the Communications Decency Act, 47 U.S.C. § 230.

50.    House Bill 1274, as the Legislature intends it to be applied to Mayday, and as defendants intend to apply it to Mayday, violates the Communications Decency Act, 47 U.S.C. § 230.

## **Request for Relief**

Plaintiffs request judgment granting:

1.      A preliminary and permanent injunction barring defendants from enforcing or threatening to enforce House Bill 1274 against Mayday and Turbak;

2.      A declaratory judgment that House Bill 1274 is unconstitutional as applied to Mayday and Turbak, and that it violates Section 230 as applied to Mayday;

3.      A declaratory judgment that the "advertise" prohibition of House Bill 1274 is unconstitutional on its face;

4.      Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

5.      Such other and further relief as the Court deems just.

Dated: May 29, 2026              /s/ James D. Leach
                                 James D. Leach
                                 Attorney at Law
                                 1617 Sheridan Lake Rd.
                                 Rapid City, SD 57702
                                 Tel: (605) 341-4400
                                 jim@southdakotajustice.com
                                 Attorney for Plaintiffs

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mayday Health and Nancy Turbak Berry

## DEFENDANTS

Governor Larry Rhoden and Attorney General Marty Jackley, both sued in their official capacities

**(b)** County of Residence of First Listed Plaintiff    New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

James D. Leach/Attorney/1617 Sheridan Lake Rd./Rapid City, SD 57702/605 341 4400

Attorneys *(If Known)*

Marty Jackley/Attorney General/1302 SD Hwy 1889, #1/Pierre, SD 57501/605 773 3215

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | |
|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* |
| | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
First Amendment violation - defendants seek to prevent plaintiffs from speaking about abortion

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
May 29, 2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ James D. Leach

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____