UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Mayday Health and Nancy Turbak Berry, | ) ) ) | |
| Plaintiffs, | ) ) | Civ. 26-_____ |
| v. | ) ) | |
| Governor Larry Rhoden and Attorney General Marty Jackley, sued in their official capacities, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**Memorandum in Support of
<u>Motion for Preliminary Injunction</u>**

**Table of Contents**

I.      Summary of case                                                                 3

II.     Statement of facts                                                              5

III.    Mayday and Turbak have standing                                                 7

IV.     The First Amendment protects Mayday's and Turbak's speech                      10

V.      House Bill 1274 targets Mayday and, at the Attorney General's request,         18
        sharpens the State's criminal prosecution tools

        A.      House Bill 1274 aims at Mayday and anyone who like Turbak             18
                seeks to convey information similar to the information Mayday
                conveys

        B.      At the Attorney General's request, Section 1 of HB 1274              20
                revises South Dakota law to facilitate criminal prosecution
                of Mayday and people like Turbak

VI.     The "advertise" prohibition of House Bill 1274 is unconstitutional on          21
        its face because it prohibits or chills a substantial amount of protected
        speech

VII.    House Bill 1274, as the Legislature intends it to be applied to Mayday,        25
        and as defendants intend to apply it, violates the Communications
        Decency Act of 1996

VIII.   This Court should issue a preliminary injunction                               28

        A.      All factors favor issuance of a preliminary injunction                28

        B.      A bond should not be required                                         30

IX.     Conclusion                                                                     31

## I.    Summary of case

This case involves a classic example of government imposing criminal and civil penalties on speech it disfavors.  South Dakota's Governor, Attorney General, and Legislature loathe Mayday's speech and Turbak's intended speech.  But the First Amendment guarantees their right to speak, no matter how strongly the government disapproves.

In the State's telling, the First Amendment does not apply to Mayday and Turbak's speech because it is criminal under a variety of theories: soliciting illegal acts, aiding and abetting illegal acts, and even directly committing illegal acts.  But calling speech illegal does not make it so.  And most of what the State complains about is information on third-party websites that Mayday's website links to—information for which Mayday may not be held responsible under Section 230 of the Communications Decency Act of 1996.

Beginning in December 2025, and continuing into March 2026, the Governor and Attorney General condemned Mayday's speech as criminal under existing law. The 2026 Legislature targeted Mayday with House Bill 1274.  It provides that "No person may knowingly dispense, distribute, sell, or *advertise*" (emphasis added) anything "for purposes of an unlawful abortion pursuant to § 22-17-5.1[.]"

Section 22-17-5.1 makes *every* South Dakota abortion unlawful, "unless there is appropriate and reasonable medical judgment" that it "is necessary to preserve the life of the pregnant female[.]"  So House Bill 1274 means that anyone who "knowingly dispense[s], distribute[s], sell[s], or advertise[s]" anything for any abortion in South Dakota, except to save a pregnant woman's life, commits a felony.

Neither Mayday nor Turbak "dispense, distribute, [or] sell" anything that could be used to cause an abortion, or ever will do so.  They do not challenge those provisions on their face, because on their face they are within the State's power under *Dobbs*.  But the words and actions of the Governor, the Attorney General, and the Legislature prove that the State is highly likely to use these provisions, and the prohibition on "advertis[ing]," to prosecute Mayday and Turbak criminally and civilly for their First Amendment and Section 230 protected speech once HB 1274 becomes effective on July 1, 2026.

Mayday "advertises" abortion pills only in the sense that it provides information about them, and information on its website about groups that provide them.  Turbak intends—if this Court grants relief—to wear Mayday apparel that "advertises" abortion pills. Turbak's intended speech is no different than Mayday's gas station advertisements reading "Pregnant?  Don't want to be?" that Governor

4

Rhoden, Attorney General Jackley, and the South Dakota Legislature found so offensive that it triggered the State's civil lawsuit against Mayday, the State's multiple threats to prosecute Mayday criminally, and the Legislature's enactment of HB 1274.

## II.    Statement of facts

Mayday Health is a nonprofit organization established after *Dobbs v. Jackson Women's Health Organization*.  It provides information about reproductive health care, including abortion and abortion pills.  It operates a website that provides information and links to other organizations.  Mayday does not sell, handle, provide, offer for sale, or distribute any medications, nor does it charge money or receive valuable consideration for disseminating its message.  Raisner Declaration ¶¶ 1-6.

In December 2025 Mayday put signs at South Dakota gas stations that read: "Pregnant? Don't want to be?" and offered people the opportunity to "Learn more" by visiting Mayday's website.  This began a battle of two lawsuits—by the State against Mayday in Hughes County, and by Mayday against the State in the Southern District of New York.  Raisner Declaration ¶¶ 7-16.  Attorney General Jackley repeatedly accused Mayday of criminal misconduct.  Raisner Declaration ¶¶ 9, 14,

15, and 20-22.  Federal district judge Katherine Polk Failla ruled that all Mayday's speech is protected by the First Amendment.  Raisner Declaration ¶ 24.

The lawsuits settled, but within days, and explicitly motivated by Mayday's speech, the South Dakota Legislature enacted House Bill 1274.  It creates new crimes that target Mayday based on its speech, adds civil penalties, and sharpens the law to facilitate sting operations against Mayday and others.  Raisner Declaration Exhibits 15-19.  As a result, Mayday and Turbak will self-censor their speech to avoid the intimidating likelihood of felony prosecution in South Dakota.  Raisner Declaration ¶¶ 29 and 30.  This is exactly as the framers of House Bill 1274 intended.

Nancy Turbak, a lawyer, owns a Mayday Health sweatshirt that reads:

*"They don't want*

*you to know this:*

You can still get

ABORTION PILLS

*in all 50 states*

Learn More at Mayday.Health"

This is the same message as "Pregnant?  Don't want to be?" gas station signs that began Mayday's disputes with the State, and that the State has repeatedly

6

asserted were a crime.  In light of House Bill 1274, Turbak will self-censor and not wear her sweatshirt after the law becomes effective on July 1, to avoid civil and criminal prosecution.  Turbak Declaration ¶ 5.

### III.    Mayday and Turbak have standing

Standing is "an inescapable threshold question." *Dakota Rural Action v. Noem*, 416 F. Supp. 3d 874, 880 (D.S.D. 2019), quoting *Advantage Media, L.L.C. v. Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006).  Standing has "three elements: 'injury in fact, causation, and redressability.'" *First Choice Women's Resource Centers v. Davenport*, ___ U.S. ___, 2026 U.S. Lexis 1949 * 12 (April 29, 2026), quoting *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110-11 (2025).  The "injury in fact" must be "fairly traceable to the challenged conduct of the defendant," and "likely to be redressed by a favorable judicial decision." *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022), quoting *Young America's Found. v. Kaler*, 14 F.4th 879, 887 (8th Cir. 2021). "An injury in fact does not arise only when a defendant causes a tangible harm to a plaintiff, like a physical injury or monetary loss.  It can also arise when a defendant burdens a plaintiff's constitutional rights." *First Choice Women's Resource Centers v. Davenport*, *supra*, 2026 U.S. Lexis 1949 * 19.

7

At the preliminary injunction stage, the standing inquiry is lenient. "When assessing standing at the preliminary injunction stage, this circuit has assumed the complaint's allegations are true and viewed them in the light most favorable to the plaintiff." *Dakotans for Health v. Noem*, *supra*, 52 F.4th at 386. In a First Amendment case like this one involving "threatened enforcement effort [that] implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing." *Dakotans for Health v. Noem, id.*, quoting *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016).

Mayday and Turbak would engage in speech protected by the First Amendment after HB 1274 becomes effective on July 1, 2026, but intend to censor themselves to avoid the criminal and civil penalties of HB 1274. The Attorney General has incessantly alleged that Mayday's speech is criminal even under current law, before HB 1274 becomes effective. Raisner Declaration ¶¶ 9, 14, 15, and 20-22. HB 1274 targets Mayday, as discussed in Section V below. Mayday and Turbak's fear of prosecution is credible, so they have standing. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a

8

criminal prosecution as the sole means of seeking relief.'"  *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979), quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

The threat itself is injury. "[W]hen a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights, 'a credible threat of present or future prosecution *itself works an injury . . . .*'" *People for the Ethical Treatment of Animals, Inc. v. Iowa Citizen for Community Improvement*, 173 F.4th 959 (8th Cir. 2026), 2026 U.S. App. Lexis 11529 *8-9, quoting *Minn. Citizens Concerns for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997).  Or in other words, "the value of a sword of Damocles is that it hangs—not that it drops."  *First Choice Women's Resource Centers v. Davenport*, ___ U.S. ___, 2026 U.S. Lexis 1949 * 23, quoting *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting).

Both Mayday and Turbak have standing, even though only one need have standing for this case to proceed.  *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1078 (8th Cir. 2024).  The general enforcement powers of the Governor and Attorney General satisfy the causation and redressability elements of standing.  *Dakota Rural Action v. Noem, supra*, 416 F. Supp. 3d at 881.

## IV.    The First Amendment protects Mayday's and Turbak's speech

Abortion—when it should be available, to whom, and under what circumstances—is "a profound moral question" of great public interest.  *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 302 (2022).  Mayday and Turbak's speech goes directly to this profound moral question.  Speech on matters of public interest is at the core of the First Amendment.  Such speech "occupies the highest rung on the hierarchy of First Amendment values, and is entitled to special protection."  *Snyder v. Phelps*, 562 U.S. 443, 452 (2011), quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983).  "The most basic of [First Amendment] principles is this: '[A]s a general matter, . . . government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'"  *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790-91 (2011), quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (alterations in original).

HB 1274 regulates speech based on its content, so it is presumptively unconstitutional.  "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).  A law is "content based" if it "applies to particular speech because of the topic discussed or the idea or message

expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). HB 1274 applies to Mayday and Turbak's speech because of the topic discussed, abortion, and the idea or message Mayday and Turbak express: that even after *Dobbs,* and even in South Dakota, a woman has a choice about whether to carry a pregnancy to term.

Because HB 1274 regulates speech based on its content, it is subject to strict scrutiny. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Strict scrutiny" enforces 'the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Free Speech Coalition v. Paxton*, 606 U.S. 461, 484-85 (2025), quoting *National Institute of Family and Life Advocates v. Becerra*, 585 U.S. 775, 766 (2018).

Scrutiny that is strict in theory is fatal in fact. A law subject to strict scrutiny "as a practical matter . . . is fatal in fact absent truly extraordinary circumstances." *Id.* at 485. The Supreme Court has "held only once that a law triggered but satisfied strict scrutiny—to uphold a federal statute that prohibited knowingly providing material support to a foreign terrorist organization." *Id.* at 484. HB 1274 as applied

11

to Mayday and Turbak fails strict scrutiny, because it is neither narrowly tailored nor serves a compelling state interest. To the contrary, it criminalizes Mayday and Turbak's lawful speech, so it satisfies neither prong of strict scrutiny. So as applied to Mayday and Turbak, HB 1274 is unconstitutional.

In *Chiles v. Salazar*, 146 S.Ct. 1010 (2026), 2026 U.S. Lexis 1565, Colorado banned licensed counselors from talking with their clients about "conversion therapy," meaning talking about changing their sexual orientation. Plaintiff objected to the law as applied to her. The Court struck it down as unconstitutional viewpoint discrimination. "The First Amendment envisions the United States as a rich and complex place where all enjoy the freedom to think as you will and to speak as you think." 2026 U.S. Lexis 1565 * 14-15. "'Viewpoint discrimination,' as we have put it, represents 'an egregious form' of content regulation, and governments in this country must nearly always 'abstain' from it." 2026 U.S. Lexis 1565 * 16.

Colorado's law was viewpoint discrimination because it "trains directly on the content of [plaintiff's] speech and permits her to express some viewpoints but not others." 2026 U.S. Lexis 1565 * 29. HB 1274 as applied to Mayday and Turbak is viewpoint discrimination, because it trains directly on the content of their speech (abortion) and permits them to express the State's viewpoint (e.g. that abortion is

dangerous and morally indefensible) but not their viewpoint (that a pregnant woman should have access to information that allows her to consider her options, including abortion, and that abortion pills can be a safe, reasonable choice).

In short, "the people lose whenever the government transforms prevailing opinion into enforced conformity." 2026 U.S. Lexis 1565 * 36-37 (cleaned up). The First Amendment is "a judgment that every American possesses an inalienable right to think and speak freely, and a faith in the free marketplace of ideas as the best means for discovering truth." 2026 U.S. Lexis 1565 * 37.

Just as Colorado thought that Chiles should not be allowed to speak about conversion therapy, South Dakota thinks that Mayday and Turbak should not be allowed to speak about abortion. Chiles did not challenge Colorado's regulation of *actions* involving conversion therapy. 2026 U.S. Lexis 1565 * 9. Likewise, Mayday and Turbak do not challenge South Dakota's regulation of *actions* involving abortion. But South Dakota cannot regulate Mayday and Turbak's speech about abortion any more than Colorado could regulate Chiles's speech about conversion therapy.

*Nat'l Inst. of Fam. & Life Advocates v. James*, 160 F.4th 360 (2d Cir. 2025), affirmed a preliminary injunction in favor of an anti-abortion group that wanted to publicize abortion pill reversal, but was deterred from doing so by New York State's

threats to sanction its speech.  This case is the other side of the coin.  New York unconstitutionally targeted anti-abortion speech; South Dakota unconstitutionally targets pro-choice speech.

Similarly, *Bigelow v. Virginia*, 421 U.S. 809 (1975), held that even before *Roe v. Wade*, 410 U.S. 113 (1973) was decided, a state law criminalizing any "publication, lecture, advertisement," or "the sale or circulation of any publication," to "encourage or prompt the procuring of abortion," as applied to an advertisement published in Virginia for an abortion in New York, violated the First Amendment.

Defendants assert that Mayday and Turbak's speech is a crime.  Complaint ¶¶ 10, 13-16, 18-24, and 31.  But neither Mayday nor Turbak advises or counsels anyone to commit a crime.  Even if Mayday and Turbak's speech encourages acts that South Dakota has criminalized, the First Amendment bars South Dakota from criminalizing their speech.  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.")

*Ashcroft* struck down the Child Pornography Prevention Act of 1996 based on the "vital distinctions between words and deeds, between ideas and conduct." *Id.* "The government may not prohibit speech because it increases the chance an

unlawful act will be committed 'at some indefinite future time.'" *Id.* quoting *Hess v. Indiana*, 414 U.S. 105, 108 (1973). "The government may suppress speech that advocates breaking a law "only if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Id.* quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

Only speech that crosses the boundary into "attempt, incitement, solicitation, or conspiracy" can be prohibited. *Ashcroft v. Free Speech Coalition, supra*, 535 U.S. at 253. The State calls Mayday's speech illegal "solicitation." Complaint ¶¶ 18, 19, 22, and 23. But calling a duck a goose does not make it one. Calling speech illegal "solicitation" does not make it so. To "solicit" someone to do something is not by itself criminal; to "solicit" can "involve expressive activity of many kinds, expressive activity that is protected speech." *Dakota Rural Action v. Noem*, 416 F. Supp. 3d 874, 884 (D.S.D. 2019).

Speech that encourages or solicits a crime is not a crime. "Plenty of speech encouraging criminal activity is protected under the First Amendment. Abstract 'advocacy of lawlessness' is protected speech." *United States v. Al-Timimi*, 164 F.4th 292, 303 (4th Cir. 2026), quoting *United States v. Miselis*, 972 F. 3d 518, 533 (4th Cir. 2020). "'[M]ere encouragement' of unlawful activity 'is quintessential protected

15

advocacy.'" *Id.*, quoting *Miselis* at 536.  Speech is unprotected only when it is "directed to inciting or producing *imminent* lawless action and is likely to incite or produce such action."  *Id.*, quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).  A criminal solicitation theory "crucially . . . require[s] an intent to bring about a *particular* unlawful act."  *Id.* at 304, quoting *United States v. Hansen*, 599 U.S. 762, 771 (2023).  "[M]ere advocacy or encouragement of lawlessness" is insufficient.  *Id.* at 309.

Mayday and Turbak make information available about choices that women continue to have in all states, including South Dakota.  Neither advocates any unlawful act.  And they do not go the next step beyond advocating an unlawful act, and advocate a "particular" unlawful act.  They make information available so that pregnant women can make their own choices.  Mayday and Turbak's speech does not even approach the dividing line between speech and crime.

The United States District Court for the Southern District of New York, Hon. Katherine Polk Failla, rejected South Dakota's theories that Mayday's speech or action are illegal.  She agreed that Mayday's speech is protected by the First Amendment:

- "I do believe that the proper way to view Mayday's website and the materials on it is noncommercial speech subject to protection under the First Amendment." Raisner Declaration Exhibit 13 at 14.

- "[A]bsent Younger abstention, this Court would be granting plaintiff's motion for injunctive relief." Raisner Declaration Exhibit 13 at 15.

- "My read—what the materials I have before me suggest that Mayday's website contains, under what I will call the NIFLA [*National Institute of Family and Life Advocates v. James*, 160 F.4th 360 (2d Cir. 2025)] case, noncommercial speech. It is speech that is based on moral beliefs with no economic motivation. The plaintiff does not charge the patrons of the website or the service providers for referrals and the fact that the website solicits donations does not transform its contents into commercial speech[.]" Raisner Declaration Exhibit 13 at 15-16.

- "I also do not believe that the website solicits or abets acts that are illegal under South Dakota law." Raisner Declaration Exhibit 13 at 16.

- "[I]f I had jurisdiction, which I don't believe I do, I think the South Dakota statute would be subject to strict scrutiny analysis and we would see whether it was narrowly tailored to serve a compelling state interest under NIFLA, [and] the answer would probably be no." Raisner Declaration Exhibit 13 at 16-17.

## V. House Bill 1274 targets Mayday and, at the Attorney General's request, sharpens the State's criminal prosecution tools

### A. House Bill 1274 aims at Mayday and anyone who like Turbak seeks to convey information similar to the information Mayday conveys

House Bill 1274's prime House Sponsor, Representative John Hughes, speaking to the House State Affairs Committee, on February 20, 2026, just hours before the State was due in court a few blocks away in its civil prosecution of Mayday, stated: *"[A]s we all are aware, there are bad actors that are marketing abortion-inducing medicines, pills to South Dakotans. You're familiar, I'm certain, with the Mayday Medicine case, which our Attorney General is—is handling and which now is back in South Dakota.* This is reckless and dangerous conduct. I won't comment on the threatened

lives, health and safety of South Dakotans which those medications cause and *1274C criminalizes this bad behavior and provides the Attorney General with enforcement tools to prosecute, to obtain injunctive relief, and to collect civil penalties for these bad actors.*" Raisner Declaration Exhibit 16 at 3-4 (emphasis added).

Four days later, Hughes told the House: "*The bill says that you can't advertise abortion drugs by signage on a gas pump or in a restroom or on a billboard* or knowingly, and this is the key word, dispense, distribute, sell or advertise for purposes of an unlawful abortion."  Raisner Declaration Exhibit 17 at 3 (emphasis added).

On March 4, Hughes told the Senate State Affairs Committee: "*You're likely familiar with the Mayday Medicine case in which ads offering abortion pills are appearing on gas pumps in South Dakota convenience stores.*  We believe that gas stations and restrooms should stick to offering condoms and not be used to advertise abortion pills . . . *This is reckless and dangerous commercial conduct for profit that poses a threat to the health, safety and even the lives of South Dakotans.  HB 1274 criminalizes this conduct and gives our Attorney General and State's Attorney's the tools to prosecute, obtain injunctive relief, and pursue civil remedies.*"  Raisner Declaration Exhibit 18 at 3-4 (emphasis added).

Hughes continued: *"We're talking about gas stations. We're talking about advertising abortion pills on gas pumps. Is that what we want?"* Raisner Declaration Exhibit 18 at 31 (emphasis added). He added: "Dr. [Glenn] Ridder [of the Alpha Center in Sioux Falls] is cleaning up after the Mayday Medicine people when they send these pills into South Dakota for a profit and they aren't caring for the people." *Id.* at 31-32.

**B.    At the Attorney General's request, Section 1 of HB 1274 revises South Dakota law to facilitate criminal prosecution of Mayday and people like Turbak**

HB 1274 Section 1 amends S.D.C.L. § 22-17-5.1 as follows: "Any person who administers to any ~~pregnant female~~ <u>person</u> or who prescribes or procures for any ~~pregnant female~~ <u>person</u> any medicine, drug, or substance or uses or employs any instrument or other means with intent thereby to procure an abortion, unless there is appropriate and reasonable medical judgment that performance of an abortion is necessary to preserve the life of the pregnant female, is guilty of a Class 6 felony." (deletions struck through; additions underlined).

Attorney General Jackley explained to the Legislature that this amendment will allow him to run sting operations: "[B]y removing the requirement to be—to any pregnant female, it [HB 1274] allows proactive law enforcement operations.

20

And what I mean by that is it's fairly common when the legislature makes a controlled or illegal substance that we are proactive and we do controlled buys, et cetera. By the existing law, by requiring it to be a pregnant female, it would require the agent or the law enforcement officer to be a pregnant female. By removing that, it allows the tools that law enforcement uses in other substances to move forward in those operations." Raisner Declaration Exhibit 18 at 9.

Senator Greg Blanc, the Prime Senate sponsor of HB 1274, explained that the proposed change originated with Attorney General Jackley: "In Section 1 of the bill, why was it, why was it that we deleted the words pregnant female and replaced it with person? This change was requested by the Attorney General to provide the Division of Criminal Investigation to pursue controlled buys, which is a—it's a technique that's used to gather evidence against individuals who are suspected of selling illegal drugs." Raisner Declaration Exhibit 19 at 6.

## VI. The "advertise" prohibition of House Bill 1274 is unconstitutional on its face because it prohibits or chills a substantial amount of protected speech

"The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).

Advertisement is speech.  By banning advertising, HB 1274 bans and chills a substantial amount of protected speech, including Mayday's and Turbak's.  So it is overbroad and unconstitutional on its face.

Under the overbreadth doctrine, a law is not saved by having a possible lawful application.  "The possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted . . ."  *Ashcroft v. Free Speech Coalition*, *supra*, 535 U.S. at 255, quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

*Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024), struck down Idaho's prohibition on "recruiting" an unemancipated pregnant minor to have an abortion with intent to conceal the abortion from the minor's parents or guardian.  The "recruiting" prohibition "violates the First Amendment by prohibiting 'a substantial amount of protected speech relative to its plainly legitimate sweep.'" *Id.* at 795, quoting *United States v. Hansen*, 599 U.S. 762, 770 (2023).  So the prohibition on "recruiting" was unconstitutional on its face, despite its possible lawful applications. Similarly, *Welty v. Dunaway*, 791 F. Supp. 3d 818, 826 (M.D. Tenn. 2025), struck down a law making it a crime to "intentionally recruit . . . a pregnant unemancipated

minor . . . for the purpose of obtaining an abortion that would be illegal in Tennessee" (cleaned up).

*Matsumoto* shows why HB 1274's advertising provision is unconstitutionally overbroad. Idaho, like South Dakota, bans abortion in almost all circumstances. The plaintiffs alleged they had provided guidance and material support to minors to obtain legal abortions, without parental consent, and wanted to continue to do so. Idaho agreed this conduct could violate its "recruiting" prohibition. *Id.* at 797-98.

To attempt to insulate its "recruiting" restriction from First Amendment challenge, Idaho argued that "recruiting" did not criminalize simply "providing information to minors." *Id.* at 809. That is a far greater concession than South Dakota will make about HB 1274, because the crux of HB 1274 is that providing information to anyone, adult or minor, about access to abortion pills is a felony.

Yet even Idaho's concession did not save its "recruiting" prohibition. The court reasoned that "information trying to persuade a girl to have an abortion or regarding the provider, time, place, or cost of an available abortion—could satisfy the plain meaning of 'recruit.'" *Id.* at 809. And "[e]ven expressions of persuasive encouragement might be prosecuted under the statute." *Id.* at 810. Under HB 1274, any information about the availability of abortion pills—including posting signs or

23

wearing a sweatshirt with the same information that could appear on a sign—satisfies the plain meaning of "advertise."

Idaho's "recruiting" restriction failed because "[e]ncouragement, counseling, and emotional support are plainly protected speech under Supreme Court precedent, including when offered in the difficult context of deciding whether to have an abortion." *Id.* at 811. "[I]nformation related to the availability of abortions, education on reproductive health care options, and instruction as to how to access an abortion legally are also protected under Supreme Court precedent." *Id.* at 812.

Idaho made the same argument that South Dakota made in the dueling lawsuits between the State and Mayday: "expressive speech and conduct" that is "otherwise protected by the First Amendment, is rendered unprotected because it is speech integral to criminal conduct." *Id.* at 813. But "[l]abeling protected speech as criminal speech" does not make it so. *Id* at 814.

In sum, the court ruled Idaho's prohibition on "recruiting" unconstitutionally overbroad because it "sweeps in a large swath of expressive activities—from encouragement, counseling, and emotional support; to education about available medical services and reproductive health care, to public advocacy promoting abortion care and abortion access." *Id.* at 814-15. Similarly, HB 1274's "advertise"

24

prohibition criminalizes mere speech, even without "encouragement, counseling, and emotional support" for anyone to have an abortion. So HB 1274 is far more plainly unconstitutional than Idaho's "recruiting" law.

**VII.    House Bill 1274, as the Legislature intends it to be applied to Mayday, and as defendants intend to apply it, violates the Communications Decency Act of 1996**

Virtually South Dakota's entire attack against Mayday—other than Mayday's "Pregnant? Don't want to be?" signs—is based on information that Mayday's website links to. Complaint ¶¶ 13-16, 20-24, and 48. The State says Mayday sells abortion pills, but its "evidence" is information on third-party websites to which Mayday's website links. The State says Mayday's website's links are criminal activity by Mayday. *Id.* But the Communications Decency Act of 1996, 47 U.S.C. § 230 prohibits Mayday being held liable for the information in these links.

The Communications Decency Act is the backbone of the internet. It provides: "It is the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(2). To accomplish this purpose, the Act mandates: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another

information content provider."  47 U.S.C. § 230(c)(1).  The Act preempts all state laws, causes of action, and claims that are inconsistent with it.  47 U.S.C. § 230(e)(3).

This Circuit rigorously enforces the Act. It "bar[s] plaintiffs from holding ISPs [internet service providers] legally responsible for information that third parties created and developed." *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010).  The Act "immunizes providers of interactive computer services against liability arising from content created by third parties." *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020) quoting *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).  "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Id.*, quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006).

Mayday provides an "interactive computer service" because it "provides or enables computer access by multiple users to a computer server[.]"  47 U.S.C. § 230(f)(2).  So it may not be deemed the speaker of such information, and it may not be held liable for content created by third parties.  Yet this is exactly what the State sought to do in its lawsuit against Mayday, and in Mayday's lawsuit against the

26

State.  Raisner Declaration Exhibit 12 ¶ 18 (State alleges "Mayday Health's website connects people with abortion pills providers"); Exhibit 12 ¶ 22 (State alleges "Depending on the consumer's answer regarding their menstrual cycle, Mayday Health determines whether to redirect them to ineedana.com [I need an abortion.com]"); Exhibit 12 ¶ 26 (State alleges "On the screen where Mayday Health connects consumers with abortion pill providers, there are five providers listed: Aid Access, Abuzz, The Map, A Safe Choice, and We Take Care of Us"); Exhibit 12 ¶ 32 (State alleges "Mayday Health's website contains links to abortion services providers"); Exhibit 12 ¶ 34 (State alleges "Another 'trusted website and partner' that Mayday Health 'connects' consumers with for abortion pills, Aid Access, informs consumers that they are eligible to self-induce an at-home abortion using abortion-inducing pills in their fourteenth week of their pregnancy, and that this is 'very safe.'")

Likewise, the Legislature in enacting HB 1274 consistently holds Mayday responsible for information on third-party websites to which Mayday's website links.  Raisner Declaration Exhibit 16 at 3-4, Raisner Declaration Exhibit 17 at 3, and Raisner Declaration Exhibit 18 at 3-4, quoted in Section V.A. above, all accusing

27

Mayday of selling abortion pills, an allegation that cam be based only on information on third-party websites, because there is no other evidence of it.

The Communications Decency Act confers immunity to suit, not just a defense to prosecution.  *Johnson v. Arden*, *supra*, 614 F.3d at 791 (CDA provides "broad federal immunity") (cleaned up).  Immunity "protect[s] websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, supra*, 521 F.3d at 1175. The State's attempt to hold Mayday liable for content created by third parties threatens Mayday with the costly and protracted legal battles the Act forbids.

## VIII.  This Court should issue a preliminary injunction

### A.    All factors favor issuance of a preliminary injunction

The preliminary injunction factors are "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc).

Probability of success is the most important.  Because plaintiffs seek to enjoin a state law, they must show they are likely to succeed on the merits.  *Minn. Chapter*

*of Associated Builders & Contrs., Inc.*, 155 F.4th 1015, 1021 (8th Cir. 2025).  Plaintiffs have done so.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 914-15 (8th Cir. 2015), quoting *Gen. Motors Corp. v. Harry Brown's*, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995), quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality).  Plaintiffs' loss of their First Amendment freedoms are irreparable.  Damages are not a remedy.

The final two factors, balance of harms and the public interest, merge because the case is against the government.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The public interest favors a preliminary injunction because it will uphold the First Amendment.  "The major purpose of the First Amendment 'was to protect the free discussion of governmental affairs.'"  *SD Voice v. Noem*, 380 F. Supp. 3d 939, 946 (D.S.D. 2019), quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966).  Indeed, "freedom of speech and association are constitutional rights that are central to all citizens of our country."  *Dakota Rural Action v. Noem*, *supra*, 416 F. Supp. 3d at 893.  The State

29

has no legitimate interest in violating the First Amendment, so the balance of harms favor plaintiffs.  All factors favor a preliminary injunction.

Courts in this District have not hesitated to enjoin unconstitutional South Dakota laws.  Recent cases include *SD Voice v. Noem*, 380 F. Supp. 3d 939 (D.S.D. 2019) (unconstitutional under First Amendment and commerce clause); *Dakota Rural Action v. Noem, supra*, 416 F. Supp. 3d 874 (D.S.D. 2019) ("riot boosting" law unconstitutional under First Amendment); *SD Voice v. Noem*, 432 F. Supp. 3d 991 (D.S.D. 2020) (unconstitutional under First Amendment); *Dakotans for Health v. Noem*, 543 F. Supp. 3d 769 (D.S.D. 2021) (same); *Dakotans for Health v. Johnson*, 2025 U.S. Dist. Lexis 218155, 2025 WL 3034030 (D.S.D.) (same).

## B.    A bond should not be required

A preliminary injunction may require a bond.  F.R.Civ.P. 65(c).  But a bond should not be required here, because defendants will sustain no costs or damages from a preliminary injunction.  Even if they could show they might, a bond is usually waived in public interest litigation.  *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (moving party not required to post a bond, because the case was public interest environmental litigation).  Courts in this district have not required bonds in similar litigation.

*Dakotans for Health v. Noem*, Civ. 21-4045, Doc. 31 (preliminary injunction against State enforcing Senate Bill 180 (2020) because it violated the First Amendment, bond not required); *Dakotans for Health v. Anderson*, Civ. 23-4075, Doc. 43 at 34 (preliminary injunction against Minnehaha County to restrain First Amendment violation, bond not required); *Dakotans for Health v. Ewing*, Civ. 23-5042, Doc. 12 at 16 (temporary restraining order against Lawrence County to restrain First Amendment violation, bond not required).

## IX.   Conclusion

South Dakota, through its Governor and Attorney General, and most recently through its Legislature in enacting HB 1274, has taken an extraordinarily broad view of when speech about abortion constitutes a crime, and an unsupportably narrow view of Section 230.  They say that Mayday's previous speech was criminal because it was solicitation, aiding and abetting, and directly engaging in crime.  House Bill 1274 adds more criminal arrows to the State's quiver.  The Attorney General's actions and statements prove he intends to use those new weapons against Mayday and against anyone like Turbak who engages in the same speech as Mayday.

Just weeks ago, the Supreme Court unanimously forbade a state where pro-choice officials hold sway, New Jersey, from seeking information about anti-abortion

31

groups, because it sought to "achieve exactly what the First Amendment forbids, marginalizing dissident voices and reshaping the marketplace of ideas to its pleasure," and "[n]one of that is consistent with our Constitution[.]" *First Choice Women's Resource Centers v. Davenport*, ___ U.S. ___, 2026 U.S. Lexis 1949 * 30.  This case is worse.  South Dakota, where anti-abortion officials hold sway, seeks to criminalize, not marginalize, Mayday and Turbak's dissident voices, thereby limiting the marketplace of ideas in accordance with the State's views.

The First Amendment and Section 230 protect Mayday and Turbak from criminal or civil prosecution.  If Mayday and Turbak must self-censor to avoid being charged, the core First Amendment interest in free, open, robust debate on matters of public concern loses.  This lawsuit seeks to uphold the First Amendment, and Section 230 as it applies to Mayday; it seeks for the moral debate about abortion to continue in South Dakota, just as it continues in New York (*Nat'l Inst. of Fam. & Life Advocates v. James*, 160 F.4th 360 (2d Cir. 2025)) and New Jersey (*First Choice Women's Resource Centers v. Davenport*, ___ U.S. ___, 2026 U.S. Lexis 1949); and it seeks to allow Mayday and Turbak to speak without fear of being criminally or civilly prosecuted for their First-Amendment protected speech.

32

Dated: May 29, 2026        Respectfully submitted,

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel: (605) 341-4400
jim@southdakotajustice.com
Attorney for Plaintiffs