# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| **MAYDAY HEALTH** and **NANCY TURBAK BERRY,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**LARRY R. RHODEN,** Governor for the State of South Dakota, and **MARTY J. JACKLEY,** Attorney General for the State of South Dakota, in their official capacities,<br><br>*Defendants.* | * * * * * * * * * * * * * * * | 4:26-cv-04096-CCT |

**SUPPLEMENTAL RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

Defendants Larry R. Rhoden and Marty J. Jackley, by and through their counsel Amanda J. Miiller, Grant M. Flynn, Jacob R. Dempsey and Paul S. Swedlund hereby file this supplemental response to plaintiffs' motion for a preliminary injunction. This supplemental response brings to the court's attention certain additional authorities regarding the likelihood of Mayday succeeding on its CDA230 defense.

1. CDA230 immunizes Service Providers from "liability based on content *posted* by third parties." *Anderson v. TikTok,* 116 F.4th 180, 183 (3rd Cir. 2024)(emphasis added). CDA230 does not immunize Service Providers who decide what third-party content will be delivered to site users. *TikTok,* 116 F.4th at 184. The act of deciding what third-party content a Service Provider will deliver to a site user is the Service Provider's *own* expression, which is not exempt from liability under CDA230. *TikTok,* 116 F.4th at 184. Mayday.Health is not an open platform which Aid Access or Abuzz can access unilaterally. Rather, Mayday.Health decides which third-party abortion pill merchant content to post and link itself to and even endorses the selected merchants as having "the best content for a certain

aspect of abortion care" and as being a "trusted" sources for information and drugs. Thus, the act of advertising for and posting links to content offering to ship pills to "all 50 states" is Mayday's own expression which is not immunized by CDA230. *TikTok,* 116 F.4th at 184.

2. *Dyroff v. Ultimate Software Group,* 934 F.3d 1093 (9th Cir. 2019), suggests that a website that is more than a mere Service Provider can be liable for the consequences of drugs sold via its website. *Dyroff* found that Ultimate Software Group could not be liable for drugs sold by a third-party Content Provider accessed via its website because:

   - Ultimate Software Group was only a Service Provider because it did not create or publish its own content.
   - Ultimate Software Group was a mere publisher of third-party content because it used a content-neutral, "blank box" format in which users typed in the type of third-party content they wished to access, *i.e.* "where can i score heroin in jacksonville, fl."
   - Ultimate Software Group was not responsible for the third-party content in question because, unlike *TikTok*, it did not curate and deliver user-specific content via content-driven algorithms of its own creation.

   Mayday.Health does not meet *Dyroff's* criteria for CDA230 immunity because, unlike Ultimate Software Group, the Mayday.Health website contains a great deal of non-neutral, Mayday-created content which steers users toward "trusted" abortion pill merchants of Mayday's choosing whose message Mayday endorses. *Dyroff,* 934 F.3d at 1097-1099.

3. CDA230 does not apply here because the state is not seeking to penalize Mayday solely on the basis of it being a publisher of third-party content. In *Doe v. Internet Brands,* 824 F.3d 846 (9th Cir. 2016), two individuals used the defendant's website to message and lure the plaintiff to sham auditions where she was drugged and raped. *Doe,* 824 F.3d at 848. The

*Doe* court ruled that, when the Service Provider was alleged to have known of the scheme beforehand, it could be liable for failure to warn because it could have fulfilled its duty to warn "without changes to content posted by the website's users." *Doe,* 824 F.3d at 851. As in *Doe,* Mayday knows ahead of time that its advertisements will draw South Dakota women to its website and then to the abortion pill merchants it is linked to. Mayday can prevent illegal transactions involving South Dakota women via changes to its own website – by not advertising on its own website that abortion pill merchants will ship to states where abortion is illegal and informing women that mailing abortion drugs to South Dakota is illegal – without changing any third-party content on its website. So CDA230 immunity does not apply here because, as in *Doe*, Mayday is not being penalized for the third-party content it publishes, but for its own actions in advertising and operating a website designed to solicit and facilitate illegal transactions. *Doe,* 824 F.3d at 854.

4. CDA230 does not immunize Mayday's facilitation of illegal transactions. In *Fair Housing Council of San Fernando Valley v. Roommates.Com,* 521 F.3d 1157, 1164 (9th Cir. 2008), the court found that a roommate-matching website was not CDA immune for engaging in discriminatory conduct through a series of questions to users about discriminatory gender, race or sexual orientation preferences that violated the Federal Housing Act. The court found that eliciting a series of "illegal preferences" from users "contribute[d] materially to the alleged illegality of [third-party] conduct" promoted by the website. *Roommates.Com*, 521 F.3d at 1165, 1168. In doing so, the website "became more than a passive transmitter of information provided by others." *Roommates.Com*, 521 F.3d at 1166.

Mayday.Health is not a mere Service Provider. It is not an open platform that Aid Access and other abortion pill sellers access which acts as a mere medium for their communications with

buyers and *vice versa*. Mayday itself decides which abortion pill merchants it will post and link its website to and advertises on their behalf on its website. Mayday does not operate via content-neutral, "blank boxes" but rather pre-populated, content-driven prompts like "Abortion" or "FAQs" on which users click, which then steer them toward the abortion drug merchants Mayday advertises on its site. Along the way, Chatbot Charley delivers a classic sales pitch:

- He promises to solve a problem, *i.e.* "**PREGNANT? DON'T WANT TO BE?**"
- He offers a simple solution validated by success stories or statistics, *i.e.* telling women abortion pills are "very safe and effective for ending a pregnancy," telling women "it's safe to take pills without seeing a provider first."
- He preempts and overcomes objections, *i.e.* telling women that "[a]bortion pills are available online in every state thanks to shield laws," telling women that "[i]t's not a crime in any state for people to get or use abortion pills for themselves before 24 weeks of pregnancy," telling women that abortion is "medically safe no matter how far along someone is in their pregnancy," offering to "help [her] choose which type of abortion . . . to get," telling them not to "tell anyone that you took abortion pills, even if you need to visit a medical provider for follow-up care."
- He closes the deal, *i.e.* telling women abortion pills can be "prescribed online and sent in the mail," telling her she can "[g]et abortion pills mailed to your home from a telehealth provider, and take them on your own," offering to "share a link to a website that serves people of all ages," referring her specifically to "Aid Access[, who] ships pills to people in all 50 states for $150 or less."

This brazen hard sell on Mayday's *own* website goes far beyond the non-immunized, algorithm-derived, user-specific content delivery of *TikTok*, far beyond the content-neutral, "blank box"

immunized sales transaction in *Dyroff,* far beyond the non-immunized, non-third-party-content-based breach of duty of *Doe,* and far beyond the immunized role of a "passive transmitter" to non-immunized eliciting of "illegal [user] preferences" as in *Roommates.Com.*

As the 9th Circuit has made clear, websites are not havens to do what a "brick-and-mortar counterpart" could not do. *Roommates.Com,* 521 F.3d at 1164. A brick-and-mortar pharmacy could not advertise abortion pills in its window but evade responsibility for soliciting and facilitating a violation of SDCL 22-17-5.3 by, instead of selling the pills themselves, referring a customer to a third-party to consummate the transaction. CDA230 does not "create a lawless no-man's-land on the internet." *Roommates.Com,* 521 F.3d at 1164. Since, under South Dakota law, Chatbot Charley's chipper proposition to procure abortion pills for women would be "unlawful [if] posed face-to-face or by telephone, [it] do[es]n't magically become lawful when asked electronically online." *Roommates.Com,* 521 F.3d at 1164. Because, as applied to Mayday.Health, SDCL 22-17-5.3 is not "inconsistent" with CDA230, it is not preempted by federal law. Accordingly, Mayday is not likely to succeed on its CDA230 defense so no preliminary injunction should be entered on that basis.

Dated this 21st day of June 2026.

**MARTY J. JACKLEY**
**ATTORNEY GENERAL**

*Paul S. Swedlund*

Paul S. Swedlund
SOLICITOR GENERAL
Amanda J. Miiller
DEPUTY ATTORNEY GENERAL
Grant M. Flynn
Jacob R. Dempsey
ASSISTANT ATTORNEYS GENERAL
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501-8501
Telephone: 605-773-3215
paul.swedlund@state.sd.us