UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Mayday Health and Nancy Turbak Berry, | ) ) ) | |
| Plaintiffs, | ) ) | No. 4:26-cv-04096-CCT |
| v. | ) ) | |
| Governor Larry Rhoden and Attorney General Marty Jackley, sued in their official capacities, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**<u>Nancy Turbak's Opposition to State's Motion to Dismiss</u>**

## Table of Contents

I.      Summary of Argument                                                3

II.     Argument                                                          4

        A.      Turbak has standing and states a claim upon which relief can      4
                be granted

        B.      Turbak's conduct and Mayday's conduct are legally                 8
                indistinguishable

        C.      Dismissal would not protect Turbak from future state criminal     13
                and civil prosecution, in which *Younger* abstention would bar
                federal intervention; the standard in such prosecution would
                be whether the statute is unconstitutional beyond a reasonable
                doubt, not whether it is unconstitutional

III.    Conclusion                                                        15

I.      **Summary of Argument**

Nancy Turbak wants to engage in the same First Amendment-protected speech that Mayday engages in.  She wants to speak by wearing Mayday's sweatshirt, and thereby to convey the message as widely as possible:

"They don't want you to know this:

You can still get ABORTION PILLS in all 50 states"

—and that anyone can **"LEARN MORE AT MAYDAY.HEALTH."**  Doc. 6 at 2.

This is the identical—literally not figuratively identical—message that Mayday conveyed and wants to continue to convey, and that the State condemned and continues to condemn as criminal and unprotected by the First Amendment. Doc. 1 at 10-11 and ¶ 23 (State alleges the message on Mayday's sweatshirt supports its criminal allegations against Mayday, including that Mayday is "advertising and soliciting the sale [of] illegal abortion pills within the physical borders of the state of South Dakota.")

In addition, the message on Mayday's sweatshirt is similar to the message Mayday posted at gas stations in December 2025 that began this controversy, which read "Pregnant?  Don't Want to Be?  **LEARN MORE AT MAYDAY.HEALTH**."

3

Doc. 1 ¶ 9.  Both Mayday's sweatshirt and its gas station signs convey the message that a pregnant woman has choices, and that information about them is available at Mayday Health's website.

The State's current argument that Turbak's speech is not criminal does not protect her from prosecution by a future Attorney General, perhaps acting at the direction of a future Governor, or at the prodding of a future Legislature.  Turbak has standing to bring her First Amendment pre-enforcement claim both because she "is chilled from exercising her right to free expression," and because she "foregoes expression in order to avoid enforcement consequences."  *Henderson v. Springfield R-12 Sch. Dist.*, 163 F.4th 478, 492 (8th Cir. 2025) (en banc), quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (5th Cir. 2003).

## II.   Argument

### A.   Turbak has standing and states a claim upon which relief can be granted

The State brings its motion pursuant to F.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted).  The lack of subject matter jurisdiction claim is based on the State's contention that Turbak lacks standing.  Doc. 15 at 1 and 5.

Turbak's standing to seek a preliminary injunction is addressed in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction. Doc. 4 at 7. The crux of the State's argument is that Turbak's belief that she could be charged criminally or civilly under House Bill 1274 is "unrealistic," "erroneous," and "fanciful." Doc. 15 at 2-3 and 5. The State alleges that Turbak's fear of prosecution is not credible. A credible threat of prosecution confers standing. Doc. 4 at 8-9.

The State has incessantly threatened Mayday with criminal action based on the same speech that Turbak wants to engage in. The State's theories include "delivery of abortion drugs," "a plethora of deceptive acts and practices," "concealment, suppression, or omission of material facts in connection with the advertisement of abortion-inducing pills and abortion services," "the sale of abortion related merchandise," "illegal" "advisements," "illegal advertising," "knowingly advertising illegal services,'" "solicitation" which "is a criminal act in South Dakota," that Mayday's gas station signs constitute criminal "solicitation," that Mayday's speech "proposes an illegal transaction or is in furtherance of a criminal scheme," "illegal pill transactions," "facilitating illegal transactions," "inducing and commencing criminal activity," "selling abortion pills," "soliciting, inducing, commencing the illegal trafficking of pills in the State of South Dakota,"

and "advertising and soliciting abortions for teenaged children without the required parental notification."  Doc. 1 ¶¶ 10, 13-16, and 18-23.

In addition, the State has alleged that Mayday "sells merchandise on its website" with "similar messaging" about availability of abortion pills "in all 50 states" *an allegation the State supports with a photograph of a Mayday's sweatshirt that Turbak wants to wear*.  Doc. 1 ¶ 24.

Mayday provides information about abortion pills.  It does not sell abortion pills, distribute abortion pills, or receive any benefit if someone uses its website to obtain or access information about abortion pills. Doc. 5 ¶¶ 2-6.  All the same is true of Turbak.   She intends to exercise her First Amendment right to provide information about abortion pills, including how to get them.  By wearing Mayday's sweatshirt, she will provide the same information about abortion pills, and their availability in all 50 states, that Mayday provides. For Turbak to believe that she can never be prosecuted, criminally or civilly, for engaging in the same conduct that Mayday engages in, and that the State has repeatedly condemned as criminal, would be naive.

The State's allegations of criminality were not casual claims that slipped out in an unguarded moment.  Nor were they press conference assertions intended to

impress a credulous public.  The State's allegations of criminality were made in federal and state lawsuits.  Every one was made subject to Fed. R. Civ. P. 11(b) or S.D.C.L. § 15-6-11(b), which require, on pain of judicial sanctions, that the representations are made in good faith and supported by facts and law.  Every representation was made by highly skilled and reputable attorneys who have the power to prosecute the crimes they allege are being committed.  Turbak reasonably believes that Attorney General Jackley and the prosecutors who work under him did not repeatedly violate Rule 11.  Turbak would disregard Attorney General Jackley's and his subordinate attorneys' threats at her peril.  The State's well-considered threats make her fear credible.  "[T]hreatened enforcement [that] implicates First Amendment rights" means that "the [standing] inquiry tilts dramatically toward a finding of standing."  Doc. 4 at 8, quoting *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022).

The State does not say whether its standing challenge is a facial attack or a factual attack.  If the challenge is facial, the court looks only to the pleadings.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  If it is factual, the court may consider evidence outside the pleadings.  *Id*.  Either way, the State's motion should be denied.

The State's motion to dismiss for failure to state a claim may be granted only if the complaint does not allege facts that if true state a claim that is "plausible on its face." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Turbak's claims are plausible, because they are supported by the repeated on-the-record claims by Attorney General Jackley and his fellow prosecutors, all speaking and writing subject to Rule 11, that the same conduct by Mayday is criminal.

**B.    Turbak's conduct and Mayday's conduct are legally indistinguishable**

The State argues that Turbak's proposed conduct cannot be prosecuted because wearing her Mayday sweatshirt—the sweatshirt the State has alleged is criminal, Doc. 1 ¶ 24—"is not in connection with transactional activity," and that Turbak "is not in the position to sell or supply abortion pills to anyone."  Doc. 15 at 3-4.  For three fundamental reasons, the State's arguments fail to distinguish Turbak's proposed conduct from Mayday's conduct.

First, the sweatshirt contains Mayday's core message: that a woman can "still get ABORTION PILLS in all 50 states," and that she can "**LEARN MORE AT MAYDAY.HEALTH**."  Turbak's proposed speech is the same as Mayday's speech.

The State has already condemned the sweatshirt as criminal speech. Doc. 1 ¶ 24. From the advertisement on Mayday's sweatshirt, a woman can learn that abortion pills exist, and that more information is available at Mayday's website. The State argues that Turbak is differently situated than Mayday because Turbak "is not in the position to sell or supply abortion pills to anyone." Doc. 15 at 3. But neither is Mayday. Doc. 5 ¶¶ 2-6. So the State fails to distinguish Turbak from Mayday.

Second, the State's argument contradicts the text of House Bill 1274. A law means what its plain language says. *Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 13, 739 N.W.2d 475, 480 ("The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect.") (citation omitted). The State admits that "advertise" "means to make the public aware of (something or someone) especially by means of a published or broadcast notice." Doc. 15 at 1, citing https://www.merriam-webster.com/dictionary/advertise (last visited June 20, 2026). Mayday's sweatshirt, which Turbak wants to wear, does exactly that. It makes the public aware of how a woman can obtain abortion pills, and how to get more information: at Mayday's website.

*Foley v. State ex rel. South Dakota Real Estate Comm'n*, 1999 S.D. 101, ¶ 17, 598 N.W.2d 217, 221, adopts a similar definition, citing Black's Law Dictionary (6th Ed. 1990) ("defining 'advertise' as 'to announce, apprise, . . . give notice of, inform, make known[.]'") (ellipsis and bracket by Court).

To try to evade this commonsense meaning and legal authority, the State attempts to import the definition of "advertisement" from S.D.C.L. § 37-24-1(1) into HB 1274. But that statute begins "Terms used *in this chapter* mean" (emphasis added), so it applies only to Chapter 37. HB 1274 is not part of Chapter 37. Even if Chapter 37 applied here, it does not contain the "transactional versus general" distinction the State argues.

None of the state's secondary authorities are part of House Bill 1274. The State argues that the statute uses "advertise" in a "transactional sense" not a "general" one, and that "advertise" "reflects a specialized as opposed to [a] general meaning." Doc. 15 at 2. South Dakota's plain meaning rule precludes both arguments. In determining whether Turbak's fear of prosecution is credible, the court looks to the plain text of the statute. *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 667 (8th Cir. 2023) ("When a course of action is within the plain text of a policy, a 'credible threat' of enforcement exists.") *Alexis Bailley*

10

*Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) ("when a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists.")

The State cites *United States v. Hansen*, 599 U.S. 762, 771-73 (2023), which read Congress's use of "encourage" and "induce" as "terms of art" rather than as their plain meaning suggested.  But *Hansen* shows why the State's argument is wrong. *Hansen* is based on "longstanding criminal theories" that those words "target[] those who support the crimes of a principal wrongdoer," and on the fact that "'encourage' and 'induce' are among the 'most common' verbs used to denote solicitation and facilitation.'"   The opposite is true here.   "Advertise" is not part of any "longstanding criminal theories," nor is it a common verb used to denote solicitation or facilitation.  So it takes its plain meaning, not the limited technical meaning the State wants to confine it to in order to try to save it.

The State also cites *United States v. Williams*, 553 U.S. 285 (2008), but the statute there prohibited "advertis[ing] . . . any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported matter is, or contains" sexually explicit conduct of a minor. *Id.* at 289-90.  This definition made clear that the "advertising" in question was a "step[] taken in the course of an actual or proposed transfer of a product[.]" *Id.* at

11

294.  The statute "criminalizes only offers to provide or requests to obtain" child pornography.  *Id.* at 297.  HB 1274 contains no such limitation, which the State proves by asserting that it applies to Mayday, which provides only information—not anything tangible, and not abortion pills.

Third, the State's attempt to limit the reach of House Bill 1274's prohibition on "advertise" contradicts the bill's legislative history, which shows that signs like Mayday's sweatshirt are exactly what the law is aimed at.  Doc. 5-17 at 3 (Prime House Sponsor John Hughes tells the House: "The bill says that you can't advertise abortion drugs by signage on a gas pump or in a restroom or on a billboard . . . "); Doc. 5-18 at 31 (Hughes tells the Senate State Affairs Committee "We're talking about gas stations.  We're talking about advertising abortion pills on gas pumps.  Is that what we want?")  A sweatshirt is no different legally as an advertising medium than a gas pump, a restroom, or a billboard: all fulfill the purpose of disseminating a message to everyone who sees it.  Turbak's sweatshirt, like Mayday's gas station signs, direct any interested person to Mayday's website, which contains further information about abortion pills and links to companies that provide them.

Finally, even if "advertise" were construed in the technical, limited way that the State asserts it should be, if Mayday's speech violates HB 1274, Turbak's

12

proposed speech also does so, because Turbak wants to convey the same message that the State condemns Mayday for conveying: that abortion pills exist and that more information about them is available at Mayday Health.

### C. Dismissal would not protect Turbak from future state criminal and civil prosecution, in which *Younger* abstention would bar federal intervention; the standard in such prosecution would be whether the statute is unconstitutional beyond a reasonable doubt, not whether it is unconstitutional

This Court's order can protect Turbak from future state criminal proceedings for exercising her First Amendment rights. Dismissal furnishes zero protection. The present Attorney General's interpretation of House Bill 1274 does not bind a future Attorney General from proceeding as he or she deems fit. *Allegheny Corp. v. Richardson, Inc.*, 463 N.W.2d 678, 679 (S.D. 1990) (Attorney General reversed predecessors' interpretation of statute about licensing foreign corporations to own South Dakota farmland). Given the shifting winds of abortion politics, the present Attorney General's interpretation of House Bill 1274 could fall by the wayside in a moment.

If this Court were to dismiss and a future Attorney General were to charge Turbak civilly or criminally, the state proceedings would bar federal injunctive relief. Doc. 5-13 at 15 (Southern District of New York Judge Katherine Polk Failla's

13

ruling that based on *Younger v. Harris*, 401 U.S. 37 (1971), she had no jurisdiction over Mayday's 2026 action against Attorney General Jackley because of the State's pending civil enforcement proceeding against Mayday).

Furthermore, federal law protects Turbak against unconstitutional state action in a way that South Dakota law cannot. No South Dakota legal proceeding ever will determine whether a State civil or criminal prosecution against Turbak is unconstitutional. Under South Dakota law, the question is only whether a state law is being applied unconstitutionally *beyond a reasonable doubt*. *State v. Stark*, 2011 S.D. 46, ¶ 10, 802 N.W.2d 165, 169, quoting *State v. Martin*, 2003 S.D. 153, ¶ 13, 674 N.W.2d 291, 296 ("To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt.") A vast gulf exists between a law being found unconstitutional, and it being found unconstitutional beyond a reasonable doubt. In this Court, the former standard applies; in South Dakota courts, the latter applies.

Federal law allows pre-enforcement review of a statute that abridges First Amendment rights. Doc. 4 at 8-9. Turbak has properly invoked her right to that review. Dismissal would preclude such review. She is entitled to pre-enforcement review, not to be naked in front of the State's criminal and civil prosecutorial power.

14

### III.   Conclusion

The Attorney General has alleged that conduct legally indistinguishable from Turbak's conduct is criminal, and that Mayday's sweatshirt, which Turbak wants to wear, is a crime. So Turbak has standing, because her fear of future prosecution is credible. She has standing to seek pre-enforcement review of a statute whose prohibition on "advertise" is unconstitutional on its face, and that is unconstitutional as applied to her. The complaint states a claim on which relief can be granted. The State's motion to dismiss should be denied.

Dated: June 21, 2026          Respectfully submitted,

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel: (605) 341-4400
jim@southdakotajustice.com
Attorney for Plaintiffs

### Certificate of Service

I certify that on June 21, 2026, I filed this document by CM/ECF, thereby causing automatic electronic service to be made on all other parties.

/s/ James D. Leach
James D. Leach

15