UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Mayday Health and Nancy Turbak Berry, | ) ) ) | |
| Plaintiffs, | ) ) | No. 4:26-cv-04096-CCT |
| v. | ) ) ) | |
| Governor Larry Rhoden and Attorney General Marty Jackley, sued in their official capacities, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**<u>Memorandum in Support of Plaintiffs' Motion in Limine</u>**

## I.  Evidence about the alleged risks and dangers of abortion pills is irrelevant

This case is about speech.  It raises three issues: whether House Bill 1274 as applied to Mayday Health is unconstitutional and violates the Communications Decency Act (CDA); whether it is unconstitutional as applied to Nancy Turbak Berry; and whether its prohibition on "advertise" is unconstitutional on its face. Doc. 1 at 2.  The legal questions involve Mayday and Turbak's First Amendment right to speak about abortion pills, and Mayday's right under the CDA not to be held responsible for others' speech that Mayday links to on its website.  These subjects are addressed in Mayday and Turbak's Memorandum in Support of Motion for Preliminary Injunction, Doc. 4, and again in Mayday and Turbak's Reply Memorandum in Support of Motion for Preliminary Injunction, filed herewith.

This case does *not* involve whether abortion pills should be legal in the United States; whether they should be legal in South Dakota; whether abortion pills are safe, unsafe, or dangerous; whether anyone should or should not take an abortion pill; and what consequences a person might or might not suffer, other than probable termination of pregnancy, from taking an abortion pill.  These are political or medical questions, or they could arise in other lawsuits raising other issues.  They

are irrelevant to whether South Dakota can punish Mayday and Turbak's speech about abortion pills.

The State's Brief re Nancy Turbak, Doc. 15, admits the distinction between speech and action. The State addresses First Amendment-protected speech about child pornography, explosives, bomb manufacture, and *jihad.* Doc. 15 at 2-4. In none of those cases were the merits of child pornography, explosives, bomb manufacture, or *jihad* relevant.

So too here, the merits or demerits of abortion pills are irrelevant. Thus the State's proposed testimony about the merits, safety, risks, and dangers of abortion pills is irrelevant. Whether anyone should take an abortion pill is as separate from whether Mayday and Turbak's speech about abortion pills is constitutionally protected, as whether speech about child pornography, explosives, bomb manufacturer, and *jihad* is separate from such conduct. At most, testimony about the merits of abortion pills goes to what the State's policy about them should be, not the First Amendment issues here.

Dr. Giebink intends to testify that abortion pills are dangerous. Doc. 16-2 (Affidavit of Dr. Giebink) ¶¶ 8-19 and 24-26. Through her testimony, the State intends to introduce Exhibits DD, EE, and FF. Exhibit DD is a U.S. Food and Drug

3

Administration web page with information about Mifepristone.  Exhibit EE is the FDA Warning Label for Mifepristone.  Exhibit FF is the FDA Warning Label for Misoprostol.  (Doc. 26 includes internet addresses for these Exhibits in case the Court wishes to see them.)  The purpose of these exhibits is to further Dr. Giebink's testimony that abortion pills are dangerous, and that they are being misprescribed. But "dangerous" is not a ground for banning speech.  Nor is "false."  *United States v. Alvarez*, 567 U.S. 709, 717 (2012) ("Absent from those few categories where the law allows content-based regulation of speech is any general exception to the First Amendment for false statements.") And the State may not punish Mayday for failing to provide the information the State thinks it should provide.  "[T]he First Amendment does not leave it open to public authorities to compel a person to utter a message with which he does not agree."  *Henderson v. Springfield R-12 Sch. Dist.*, 163 F.4th 478, 494 (8th Cir. 2025) (en banc), quoting *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005).

Plaintiffs brief this subject in Section III of their Reply Memorandum in Support of Motion for Preliminary Injunction, filed herewith. Rather than synopsize that discussion here, plaintiffs respectfully refer the Court to it.  The testimony of Dr.

4

Giebink and Exhibits DD, EE, and FF are  irrelevant and should be excluded under Rule 402.

## II.   Dr. Giebink's testimony about abortion pills is barred by Rule 702

Expert testimony is not admissible unless it will help the trier of fact to understand the evidence or determine a fact in issue.  F. R. Evid. 702(a).  For all the reasons discussed above, Dr. Giebink's proposed testimony will not help the Court understand the evidence or determine a fact in issue.  The risks and potential benefits of abortion pills are irrelevant.  The only issue is whether plaintiffs can speak about them.

## III.   Evidence about other websites that Mayday's website links to is irrelevant

The State's Exhibits T, U, V, W, Y, and Z are from other companies' websites. Doc. 26 at 2-3.  Exhibit T is from www.plancpills.org.  Exhibits U, V, and W are from aidaccess.org, Exhibits Y and Z are from ineedana[abortion].com. Mayday's website links to these other websites.  Mayday is not legally responsible for any of this information, so these exhibits are irrelevant and should be excluded under Rule 402.

"It is the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive

computer services, unfettered by Federal or State regulation." Communications Decency Act, 47 U.S.C. § 230(b)(2) (1996). "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA preempts all state laws, causes of action, and claims that are inconsistent with it. 47 U.S.C. § 230(e)(3).

A plaintiff may not "hold[] ISPs [internet service providers] legally responsible for information that third parties created and developed." *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010). The Act "immunizes providers of interactive computer services against liability arising from content created by third parties." *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020) quoting *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).

Mayday "provides or enables computer access by multiple users to a computer server," so it provides an "interactive computer service." 47 U.S.C. § 230(f)(2). The CDA prohibits Mayday from being deemed the speaker of such information. So Exhibits T, U, V, W, Y, and Z are irrelevant.

**IV.    Evidence about Mayday's supporters or donors is privileged and irrelevant**

The government may not compel disclosure of the identity of an advocacy group's supporters and financial contributors. Compelled disclosure violates the First Amendment because it "can 'constitute a[n] effective . . . restraint on freedom of association.'" *First Choice Women's Resource Centers, Inc. v. Davenport*, ___ U.S. ___ (April 29, 2026) (slip opn. at 7), quoting *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (alterations in original). This is "'particularly' likely to follow when the government seeks to intrude into the workings of groups that hold 'dissident beliefs' disfavored by those holding the reins of power." *Id.* (slip opn. at 8).

Indeed, "[s]ince *NAACP v. Alabama*, [the Supreme Court has] faced many cases along similar lines. In them, one state authority or another has demanded private donor or member information. And in one case after another we have subjected those demands to heightened First Amendment scrutiny. . . . We have acknowledged, too, that demands for private donor information 'inevitabl[y]' carry with them a 'deterrent effect on the exercise of First Amendment rights.'" *Id.* (slip opn. at 9), quoting *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) (brackets in original).

7

Mayday is a prototypical "group[] that hold[s] 'dissident beliefs' disfavored" by those who hold the reins of power in South Dakota.  The identities of Mayday's supporters and contributors are protected by the First Amendment.  In addition, all such information is irrelevant, so it should be excluded under the First Amendment and Rule 402.

Dated: June 21, 2026    Respectfully submitted,

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel: (605) 341-4400
jim@southdakotajustice.com
Attorney for Plaintiffs

Certificate of Service

I certify that on June 21, 2026, I filed this document by CM/ECF, thereby causing automatic electronic service to be made on all other parties.

/s/ James D. Leach
James D. Leach

8