# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA

|  |  |  |
|---|---|---|
| | * | |
| **MAYDAY HEALTH** and **NANCY TURBAK** **BERRY,** | * | |
| | * | |
| | * | |
| *Plaintiffs,* | * | |
| | * | 4:26-cv-04096-CCT |
| v. | * | |
| | * | |
| **LARRY R. RHODEN,** Governor for the State of South Dakota, and **MARTY J. JACKLEY,** Attorney General for the State of South Dakota, in their official capacities, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| *Defendants.* | * | |
| | * | |

## BRIEF IN SUPPORT OF MOTION FOR SPOLIATION REMEDY

Defendants Larry R. Rhoden and Marty J. Jackley, by and through their counsel Amanda J. Miiller, Jacob R. Dempsey and Paul S. Swedlund hereby file this brief in support of defendants' motion for a spoliation remedy. Defendants have been prejudiced by plaintiff Mayday's spoliation of the Charley chatbot on its website and request that this court either order Mayday to make the Charley chatbot temporarily available for additional examination and photographing or admit Exhibit JJ (copy attached hereto) into the record to remedy the prejudice of not having photographs of all the direct quotes in the record.

**BACKGROUND**

In preparation of the briefing in this case, undersigned counsel navigated through Chatbot Charley several times. Counsel found quotes relevant to the state's position in this case that were then e-mailed to lead counsel, Amanda Miiller, for inclusion in DCI Agent Kayla Klemann's affidavit and testimony. Counsel used these quotes in the briefing and intended them to be photographed for evidence, as was done with other quotes in the state's Exhibits D-Q. However, when Miiller and Klemann sought to photograph the quotes on Monday, June 22, 2026, Mayday

had taken Chatbot Charley down.  Agent Klemann could then only paraphrase the quotes in question during her testimony, which is inferior evidence to the actual quotes.  Undersigned counsel was traveling on June 22, 2026, and did not learn until trial that Miiller and Klemann had been unable to photograph the quotes.

Listening to Klemann's testimony, it was clear to counsel that the paraphrasings were inferior evidence in comparison to the actual quotes.  Indeed, Mayday's counsel questioned why Klemann had pictures of some Chatbot Charley quotes and not others, implying that there was something questionable or unreliable about the paraphrased quotes in comparison to the photographed quotes.  Based on the inferior evidentiary impact of the paraphrasings in comparison to actual quotes, and Mayday's argument that the paraphrasings of unphotographed quotes are suspect, it is counsel's position that the state's defense has been prejudiced by Mayday's spoliation of the Charley chatbot on the eve of trial.  Mayday cannot conceal Chatbot Charley from the state's camera then criticize the state for not having photographs.

**ARGUMENT**

Whether Mayday's advertisements and website are speech integral to criminal conduct is the central issue of this case.  Intent is an element of SDCL 22-17-5.1 and -5.3, and of solicitation and facilitation as well.  Therefore, the intent behind Mayday's advertising is central to this case.  Chatbot Charley is explicit evidence of Mayday's intent.  Which is why he was so promptly removed from Mayday's website on the eve of trial.

Mayday's purpose in removing Chatbot Charley is clear, they wanted to prevent the state from using Chatbot Charley evidence at trial.  They filed a motion *in limine* for that purpose explicitly arguing that Chatbot Charley evidence should be excluded because he had been taken

down.  Chatbot Charley had become inconvenient.  He was the overconfident member of the Mayday sales force who said the quiet part out loud and got deleted for it.

But in litigation parties cannot unilaterally render computer-stored statements of intent irrelevant at the tap of the delete button.  Fed.R.Civ.P. 37(e)(1).  If a woman told a friend "I want to kill my husband" and he dies under suspicious circumstances a year later and the evidence points to her, that statement of intent would be admissible at her trial for murder.  If the same statement were made by the woman in an e-mail a year before her husband's death, she could not magically render it irrelevant by deleting it from her computer the day before her trial.  The fact that it is a year old might go to its weight but not its admissibility.

It has not been a year since Chatbot Charley's removal.  It has not even been a week.  The fact that Mayday felt compelled to take Chatbot Charley down to improve its position in this litigation is itself evidence of its relevance.  More to the point, there is nothing about Mayday's advertising or website or actions that suggest that its intent is any different now than it was before Chatbot Charley's removal.

The Chatbot Charley evidence was spoliated on the eve of trial for the openly admitted purpose of making the evidence unavailable to the state.  The degree of that spoliation is not known.  Maybe he is dormant in some still-accessible file or in the unallocated space on the Mayday computer or maybe he is irretrievably deleted.  The former would be mere concealment (if Chatbot Charley has not yet been overwritten) and the latter would be bad faith destruction, but both are spoliation under applicable standards.

Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, [usually] a document." *Jones v. Hirschbach Motor Lines*, 2022 WL 4354856, *2 (D.S.D. 2022), citing *Spoliation*, Black's Law Dictionary (11th Ed. 2019).  Such "intentional

3

destruction of evidence indicating a desire to suppress the truth" is the "ultimate focus for imposing sanctions for spoliation of evidence." *Greyhound Lines, Inc. v. Wade,* 485 F.3d 1032, 1035 (8th Cir. 2007).

Spoliation sanctions range from the restoration or replacement of the spoliated evidence on the mild end, to an adverse inference in the middle, to a default judgment against the spoliating party at the far end. Fed.R.Civ.P. 37(e). The degree of spoliation and the availability of a remedy to cure the resulting prejudice affect the severity of the remedy a court may impose. Severe sanctions are warranted when the spoliating party "acted with the intent to deprive another party of the information's use in the litigation" in question which, as mentioned above, Mayday admitted in open court was the purpose of taking Chatbot Charley down. Fed.R.Civ.P. 37(e)(2).

Though a severe sanction could be warranted here, the state seeks only the mildest sanction – either (1) the temporary restoration of Chatbot Charley as he existed in the days leading up to the trial so the state can photograph the quotes in question or (2) the court's admission of state Exhibit JJ, which is a list of verbatim quotes taken from Chatbot Charley that were used in the state's briefing but which could not be photographed because Mayday had taken the chatbot down. The state does not ask that the court find Mayday in bad faith. The state does not even ask that the court adopt inferences of intent or consciousness guilt, though such a sanction is arguably appropriate here. *White v. United States*, 959 F.3d 328, 331 (8th Cir. 2020)(adverse inference appropriate where there is evidence of (1) "intentional destruction indicating a desire to suppress the truth" and (2) "prejudice to the opposing party"); *Auer v. City of Minot,* 896 F.3d 854 (8th Cir. 2018)(adverse inference if party "acted with intent to deprive another party of information's use").

Per Fed.R.Civ.P. 37(e)(1), the state defendants need only demonstrate prejudice "from loss of the [spoliated] information" for this court to take appropriate measures "to cure the prejudice."

4

More severe sanctions are reserved for bad faith spoliation, but, consistent with Fed.R.Civ.P. 37(e)(1), the state seeks a remedy that is "no greater than necessary to cure the prejudice."

**CONCLUSION**

A spoliation remedy is appropriate here when Mayday removed Chatbot Charley in an admitted attempt to "prevent its use in [this] litigation." Fed.R.Civ.P. 37(e)(2) advisory committee notes to the 2015 amendment. Mayday claims to just "provide information" as though "providing information" is never anything but innocent. "Providing information" with the intent to facilitate an illegal drug transaction (or any other criminal conduct) is not innocent and is not protected speech. At trial, Mayday repeatedly denied an intent to facilitate anything, which makes the Charley Chatbot evidence *more* not less relevant to the question of Mayday's intent and the credibility of its denials. But Mayday's denials are very obviously a "big fake" when Chatbot Charley took a woman through every step of acquiring and ingesting abortion pills short of handing her a glass of water to wash them down with:

- Telling women that, though "clinics aren't allowed to do abortions in South Dakota," women "still have options."

- Telling women that "[a]bortion pills are available online in every state thanks to shield laws."

- Telling women that "[i]t's not a crime in any state for people to get or use abortion pills for themselves before 24 weeks of pregnancy."

- Telling women abortion pills are "very safe and effective for ending a pregnancy."

- Telling women that abortion is "medically safe no matter how far along someone is in their pregnancy."

- Telling women "it's safe to take pills without seeing a provider first."

- Telling women that abortion pills are "available to you."

- Telling women abortion pills can be "prescribed online and sent in the mail."

- Asking women if they want "a link to a telehealth provider to get pills now."

- Referring women specifically to Aid Access, telling them that "Aid Access ships pills to people in all 50 states for $150 or less."

These quotes, not the paraphrasings made necessary by Mayday's removal of Chatbot Charley from the site, are the best evidence of Mayday's intent.

No matter what role the state defendants are in on appeal, whether as appellants or appellees, the direct quotes are the best evidence of the state's position that Mayday's advertising is in furtherance of illegal drug transactions. The Chatbot Charley evidence cannot simply be ignored because of Mayday's unilateral action in concealing, and possibly destroying, the chatbot. *Jones*, 2022 WL 4354856 at *2. The state defendants ask for no more than is necessary to cure the prejudice here. Fed.R.Civ.P. 37(e)(1). Accordingly, the state defendants ask this court to order either (1) temporary access to Chatbot Charley so that the state can take pictures of the quotes in question or (2) admit Exhibit JJ. The state further requests that, if not already irretrievably deleted, plaintiffs be ordered to preserve the Charly chatbot as it was in the days leading up to this trial.

Dated this 26th day of June 2026.

**MARTY J. JACKLEY**
**ATTORNEY GENERAL**

*Paul S. Swedlund*

Paul S. Swedlund
SOLICITOR GENERAL
Amanda J. Miiller
DEPUTY ATTORNEY GENERAL
Jacob R. Dempsey
ASSISTANT ATTORNEYS GENERAL
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501-8501
Telephone: 605-773-3215
paul.swedlund@state.sd.us