UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Mayday Health and Nancy Turbak Berry, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 4:26-cv-04096-CCT |
| | ) | |
| v. | ) | |
| | ) | |
| Governor Larry Rhoden and Attorney General Marty Jackley, sued in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opposing State's Motion for Stay**

**Table of Contents**


| | | |
|---|---|---|
| I. | Introduction | 3 |
| II. | The motion should be denied because it does not make a strong showing of likely success on the merits | 3 |
| III. | A stay would require the Court to reverse its ruling that Mayday and Turbak are likely to succeed on the merits | 4 |
| IV. | The State fails to show that the Court's findings or conclusions are erroneous | 6 |
| | A. The State fails to show a strong likelihood of success on the merits as to Mayday | 6 |
| | 1. The Court correctly ruled that Mayday's speech is not "integral to criminal conduct" or "incitement" to imminent unlawful action | 6 |
| | 2. The Comstock Act is irrelevant | 11 |
| | 3. The Court addressed all significant issues | 12 |
| | 4. The Court properly rejected the State's theory that Mayday's speech is "commercial" and therefore entitled to less protection | 16 |
| | B. Section 230 independently supports the preliminary injunction as to Mayday | 18 |
| | C. The State fails to show a strong showing of likelihood of success on the merits as to Turbak | 19 |
| | D. The State's arguments as to the other stay factors fail | 21 |
| V. | Conclusion | 24 |

## I. Introduction

The State ratchets up the rhetoric, but the substance of its argument is the same. The State refuses to accept that Mayday is doing exactly what it says it is doing: providing information to make women aware of their choices. And the State refuses to accept that Mayday's speech is protected by the First Amendment.

At the evidentiary hearing, the State twice cross-examined Leo Raisner aggressively and at length. The State asserted over and over that Raisner was not credible. This Court found otherwise. The State refuses to accept this Court's ruling. But determining witness credibility is a core function of a district court. *United States v. McCarthy*, 97 F.3d 1562, 1579 (8th Cir. 1996) ("Credibility determinations are within the exclusive domain of the district court[.]") The State provides no basis for this Court to disturb its prior findings and has not met its burden to establish that a stay is warranted.

## II. The motion should be denied because it does not make a strong showing of likely success on the merits

"A stay is not a matter of right[.]" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). The test for whether the State is entitled to a stay pending appeal is "(1) whether the stay applicant has made a *strong* showing that he is likely to

succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (emphasis added).

The State's burden of proof is "heavy." *Brady v. Nat'l Football League*, 779 F. Supp. 2d 1043, 1046 (D. Minn. 2011). "Because the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied." *Id.*, quoting 11 Charles Alan Wright, Federal Practice and Procedure § 2904, at 503-05 (2d ed. 1995).

## III. A stay would require the Court to reverse its ruling that Mayday and Turbak are likely to succeed on the merits

This Court ruled: "the Plaintiffs have shown a likelihood of success on the merits of their claim that to the extent SDCL § 22-17-53 reaches their intended speech, it is unconstitutional as applied to them." Doc. 51 at 41 (footnote omitted). This makes the State's burden especially difficult, because it asks the Court, based on the same record and authorities it already considered, to reverse itself.

In a previous case, this Court rejected the same request from the State, explaining: "Included in this [previous] determination, then, is the finding that

[defendant] is not likely to succeed on the merits of her claim[.]" *Dakotans for Health v. Johnson*, No. 4:25-CV-04050-CCT, Doc. 85 at 3 (Order Denying State's Motion to Stay), *aff'd on merits* ___ F.4th ___, 2026 U.S. App. Lexis 24140, 2026 WL 2320845 (August 11, 2026). In support of this ruling, this Court cited *Planned Parenthood Minnesota v. Noem*, No. 4:22-CV-04009-KES, 2022 WL 2374725, at *1 (D.S.D. March 28 2022): "'it follows' from the court's finding that the plaintiff is likely to succeed on the merits that the defendant is not likely to succeed on the merits." 2025 WL 3034030 (D.S.D.), Doc. 85 at 3.

Both *Brady v. Nat'l Football League* and *Planned Parenthood Minnesota v. Noem* were preliminary injunction cases. So the same standards apply to this case, even though it involves a preliminary injunction, not a permanent injunction as in *Dakotans for Health v. Johnson*.

In asking the Court to reverse itself, the State cites no new evidence. Nor does it cite any late-breaking authority. The State's motion for stay should be denied because it is inconsistent with this Court's previous ruling, just as the State's motions for stay were in *Dakotans for Health v. Johnson* and *Planned Parenthood Minnesota v. Noem*.

## IV. The State fails to show that the Court's findings or conclusions are erroneous

### A. The State fails to show a strong likelihood of success on the merits as to Mayday

#### 1. The Court correctly ruled that Mayday's speech is not "integral to criminal conduct" or "incitement" to imminent unlawful action

The Court addressed in detail the State's contention that Mayday's speech is "integral to criminal conduct," and rejected it. Doc. 51 at 29-40. The State *concedes* that "advocating for abortion pills" is lawful; that "recommend[ing]" them is lawful; and that "I encourage you to obtain [abortion pills]" is lawful. Doc. 15 at 4-5. Yet Mayday does none of these things: it does not advocate for abortion pills, it does not recommend them, and it does not encourage anyone to obtain or take them. So Mayday's speech is well within the bounds of lawfulness.

In addition, the State *concedes* that unlawful speech must "accompany or seek to induce the transfer of [abortion pills] from one person to another," or must be "the recommendation of a particular [abortion pill] with the intent of initiating a transfer." Doc. 15 at 4-5. Mayday does neither.

The State says the Court "conflated the standards it applied regarding the State's illegal speech claims, that being speech integral to criminal conduct and

incitement." Doc. 56 at 6 (footnote omitted). *If* Mayday understands the State's argument—and Mayday is not at all sure it does—it is that "[s]peech integral to a crime inquires whether the speech itself is a means of the crime—it focuses on the speaker's own act, regardless of intent, and not the subsequent acts of others." Doc. 56 at 7. And from there, the State's argument is that the Court's error "caused it to interpose a heightened intent element where it does not exist, focus on the subsequent acts of others, and then to treat Mayday's conduct as protected speech while disregarding the well-established rule that the First Amendment does not shield speech 'used as an integral part of conduct in violation of a valid criminal statute.'" Doc. 56 at 7-8.

The State's argument fails. It is circular. It says Mayday's speech is "integral to criminal conduct" because it is "integral to criminal conduct." In addition, the State says speech "integral to criminal conduct" is a strict liability offense ("it focuses on the speaker's own act, regardless of intent"). But where criminal liability rests on speech allegedly soliciting, encouraging, or facilitating unlawful conduct, a substantial mens rea is required. *United States v. Hansen*, 599 U.S. 762, 771 (2023) (upholding prohibitions on "encourag[ing]" and "induc[ing]" certain acts because

they "require an intent to bring about a particular unlawful act" and "are among the 'most common' verbs used to denote solicitation and facilitation").

Criminal liability requires both a criminal act and a criminal intent. The cases the State relies on demonstrate this. *United States v. Jackson*, 482 F.2d 1264, 1264 (8th Cir. 1973) ("affirmative involvement . . . in the consummation of the sale"); *United States v. Anziano*, 606 F.2d 242, 245 (8th Cir. 1979) ("[t]o establish aiding and abetting the government is required to show that the defendant associated himself with the unlawful venture, that he participated in it as something he wished to bring about, and that he sought by his action to make it succeed"); *United States v. Hernandez*, 986 F.2d 234, 238 (8th Cir. 1993) ("[a]n agreement to commit an illegal act"). None of these elements are present here.

Mayday's speech is insufficiently connected to a crime to allow the State to ban it. "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002) (striking down Child Pornography Prevention Act of 1996 based on the "vital distinctions between words and deeds, between ideas and conduct"). "The government may not prohibit speech because it increases the chance an unlawful act

will be committed 'at some indefinite future time.'" *Id.*, quoting *Hess v. Indiana*, 414 U.S. 105, 108 (1973).

The State disputes the Court's factual findings, asserting that its decision was "based on Mayday's self-serving testimony that it 'does not sell, handle, provide, or offer abortion pills for sale.'" Doc. 56 at 8. Labeling testimony "self-serving" is not a meaningful argument. *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989) ("characterizing a party's testimony as 'self serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'") Raisner's sworn testimony was subject to vigorous cross-examination. The Court expressly credited his testimony.

According to the State, the Court erred in finding the facts. Doc. 56 at 10 ("evidence of Mayday's intent, which the Court refused to consider"); Doc. 56 at 11 ("the Court found 'credible'" testimony that "is very obviously not an accurate description of what Mayday does[.]") But the State failed to discredit Mayday's testimony at the hearing, and does not show why its arguments should fare any better now.

The State rehashes cases the Court discussed. The State says that *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376 (1973), controls because Mayday "openly and brazenly facilitates an illegal drug transaction[.]" Doc. 56 at 21. But Mayday does no such thing. And the Court rejected the State's argument that Mayday was engaged in commercial speech, which was a predicate of *Pittsburgh Press*. The State also says the Court misread *Bigelow v. Virginia*, 421 U.S. 809 (1975), but again the State relies on the premise that Mayday "very obviously" "further[s] a criminal scheme," Doc. 56 at 22, and that Mayday is engaged in commercial speech.

Likewise, the State says the Court misunderstood *Nat'l Inst. of Fam. & Life Advocates v. James*, 160 F.4th 360 (2d Cir. 2025), and found that Mayday's speech is "*James*-protected." Doc. 56 at 23. But the Court said no such thing. It ruled that *James* goes only to whether Mayday's speech is commercial, not to whether it is integral to criminal conduct. Doc. 51 at 39. Finally, the State says the Court failed to rely on language in *Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024), and *Welty v. Dunaway*, 791 F. Supp. 3d 818 (M.D. Tenn. 2025), that the State may punish speech that is criminal or integral to criminal conduct, but the Court correctly found that Mayday's speech was neither.

Finally, the State says that the Court rejected its "incitement to imminent unlawful action" argument "without any analysis whatsoever." Doc. 56 at 16. The State is wrong. The Court analyzed the evidence and concluded: "Nor does the evidence establish that Mayday's desired speech is intended to produce unlawful abortions or incite imminent lawless action." Doc. 51 at 34 (footnote omitted). The Court was correct. *Brandenburg v. Ohio*, 394 U.S. 444, 447 (1969) (speech unprotected only when it is "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action.") As the State conceded, "[i]ncitement . . . requires both intent and a probability of imminent harm." Doc. 56 at 7.

**2. The Comstock Act is irrelevant**

One sentence of the State's Answer cited the Comstock Act. Doc. 27 ¶ 30. When the State argued the Comstock Act at the hearing, Mayday challenged the State to brief it, so Mayday could respond and the Court could evaluate the written arguments. The State declined Mayday's challenge.

Despite the State never briefing the issue, the Court explained why the Comstock Act is inapposite. Doc. 51 at 31 n.5. Now the State argues the Comstock Act. Doc. 56 at 2-4 and 29-30, and Docs. 57, 57-1, and 57-2. But it supports its argument only with the irrelevant federal obscenity statute and eight irrelevant

obscenity cases. Doc. 56 at 29. The State fails to show that this Court erred in rejecting its almost non-existent Comstock Act argument.

### 3. The Court addressed all significant issues

A district court need not address every disputed issue. *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 940 (8th Cir. 2021) ("Missouri fails to provide any support for the proposition that a district court abuses its discretion by not specifically addressing every issue of contention.") In *Petrone v. Werner Enters.*, 42 F.4th 962, 969 (8th Cir. 2022), the case the State relies on, the court failed to decide critical issues. In the present case, the Court methodically addressed the critical issues. It recounted the history of the case. It rejected the State's spoliation motion and the State's argument that plaintiffs lacked standing. It applied the standard for issuing a preliminary injunction. It examined the type of speech at issue. It rejected the State's commercial speech argument, the State's argument that the statute regulates conduct not speech, and the State's "integral to criminal conduct" argument. It examined the relevant cases, explaining how they did or did not apply here. It rejected the State's Comstock Act argument, devoting far more time to it than the State did. And it addressed the other preliminary injunction factors. Doc. 51. So it addressed every significant issue.

The State says that this Court's "most glaring omission is the lack of analysis and decision on the Deceptive Trade Practices Act." Doc. 56 at 14. But the State did not raise the Deceptive Trade Practices Act in its Answer. Doc. 27. Nor did the State raise it in its merits brief (Doc. 16), or in any other brief. The State's argument is that the Court was required to take this claim far more seriously than the State itself took it, insisting that the Court was required to explain why it does *not* apply—even though the State chose not to explain why it *does* apply.

Contrary to the State's complaints, the Court addressed the State's theory, recounting Agent Klemann's opinions that "some of the information on Mayday's website is misleading," that "Mayday does not indicate on its website that abortions are illegal in South Dakota," and that "abortion pill providers use telehealth to prescribe women abortion pills." Doc. 51 at 29-30 (footnote omitted). The Court also recounted Dr. Patricia Giebink's testimony that Mayday's messages were "misleading," including her opinion about when it is safe to use an abortion pill. Doc. 51 at 30.

In determining plaintiffs' likelihood of success on the merits, the Court explicitly balanced the State's testimony about the allegedly misleading information on Mayday's website with Mayday's testimony rebutting this charge: "Importantly,

although the Defendants argue that abortion pills are not safe and the information provided by Mayday on its website is misleading, Mayday presented evidence supporting the efficacy of abortion pills and statistical information denoting minimal adverse events. The differing views on the subject by the parties do not evince that forbidding the Plaintiffs' speech is necessary to achieve the Defendants' interests." Doc. 51 at 40-41. So the Court addressed and rejected, as a matter of fact, the State's argument.

The Court was correct not just as a matter of fact, but also as a matter of law. The First Amendment has no exception for statements a State believes are false. *United States v. Alvarez*, 567 U.S. 709, 718 (2012) (plurality). The government may not compel Mayday to speak as the State wants it to speak, requiring it to add some information (e.g. the circumstances under which abortion is generally illegal in South Dakota, and South Dakota parental consent laws), and remove other information (e.g. Mayday's experts' opinions as to how late in pregnancy abortion pills are safe). The First Amendment forbids government control of private speech. It "does not leave it open to public authorities to compel a person to utter a message with which he does not agree." *Henderson v. Springfield R-12 Sch. Dist.*, 163 F.4th 478,

494 (8th Cir. 2025) (en banc), quoting *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005).

The State's position would make the First Amendment meaningless, because it would allow the State and federal governments—and more specifically, whoever held elective office at the time—to compel speech the government approves of, and forbid speech it disapproves of. This is contrary to the core of the First Amendment. *West Virginia State Bd. of Education v. Barnette*, 319 U.S. 624, 642 (1943) ("no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.") So the Court's rejection of the State's challenge to Mayday's speech as "misleading" was correct not just as a matter of fact, but also as a matter of law.

In addition, the State alleges that the Court erred by "failing to analyze and make a ruling on the remaining evidence presented regarding illegal conduct." Doc. 56 at 13. The State complains that the Court did not address every one of a laundry list of criminal laws that Mayday supposedly violated. *Id*. But the State did not cite any of these laws in its Answer. Doc. 27. It mentioned them only in passing in its merits brief. Doc. 16. So again the State says this Court erred by not taking these issues more seriously than the State took them.

The State's primary theory at the hearing was that Mayday's speech was integral to criminal conduct. Doc. 16 at 9-15. The Court wrote more pages rejecting this argument than the State wrote making it. Doc. 51 at 29-40. Apparently the State thinks that having cited its laundry list of laws during the hearing required the Court to separately discuss each. But there is no such rule. A district court "need not 'make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision.'" *Tamko Roofing Prods. v. Smith Eng'g Co.*, 450 F.3d 822, 829, quoting *Allied Van Lines, Inc. v. Small Bus. Admin.*, 667 F.2d 751, 753 (8th Cir. 1982).

**4. The Court properly rejected the State's theory that Mayday's speech is "commercial" and therefore entitled to less protection**

Mayday is a 501(c)(3) reproductive health education nonprofit. Doc. 51 at 2. It was established to "respond to widespread confusion, fear, and misinformation" after *Dobbs v. Jackson Women's Health Organization*. *Id.* It provides information that it believes is accurate on morning after pills, birth control, abortion, and gender affirming care. *Id.* Mayday is funded by "grants, merchandise sales, and small-dollar donations." *Id.* In the past year, it received $2.3 million in grants, about $28,000 in charitable contributions, and about $3,000 in merchandise sales. *Id.*

"Commercial speech" means "expression related solely to the economic interests of the speaker and its audience[,] or "speech that does no more than propose a commercial transaction." Doc. 51 at 26, quoting *Cent. Hudson Gas*, 447 U.S. 557, 561 (1980), and *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (1983). Mayday's speech is neither.

Mayday speaks about health issues, out of a fundamental moral concern that women have accurate health information. The Court ruled that the State failed to show that Mayday's speech is commercial. This is correct. What commercial transaction does Mayday's challenged speech propose between Mayday and its audience? None.

Under the Eighth Circuit's existing framework, Mayday's speech is not "commercial." Doc. 51 at 26-28. The State disagrees, but only on the ground the Court rejected: that Mayday actually does, contrary to all the evidence, "sell, handle, or distribute" abortion pills. Doc. 56 at 18, quoting Doc. 51 at 27. The State says the Court "lost its course," and engaged in "faulty logic" leading to an "absurd result." Doc. 56 at 18. These conclusory complaints establish nothing.

The State alleges that Mayday's speech is "commercial" because Mayday receives donations and sells merchandise. Doc. 56 at 18-19. But "[a]ll speakers,

including individuals and the media, use money amassed from the economic marketplace to fund their speech. The First Amendment protects the resulting speech[.]" *Citizens United v. FEC*, 558 U.S. 310, 351 (2010). If Mayday's speech is "commercial," all speech that requires money is "commercial." Any such approach is inconsistent with *Citizens United*. Effective speech on matters of public concern in the modern world requires money.

The Court rejected the State's theories. Doc. 51 at 27-28. The State says the Court is wrong because Mayday's product is "illegal." Doc. 56 at 19. But Mayday's product is speech. Far from being illegal, "speech on matters of public concern . . . is at the heart of the First Amendment's protection." *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 758-59 (1985) (cleaned up). Such speech is "more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964).

### B. Section 230 independently supports the preliminary injunction as to Mayday

The State's primary evidence that Mayday participates criminally in the illegal sale of abortion pills is other parties' websites that Mayday's website links to. From the beginning of the case, Mayday asserted that Section 230 of the Communications

Decency Act of 1996 bars the State from treating such websites as Mayday's speech. Doc. 4 at 25-28, Doc. 31 at 22-23, and Doc. 49 at 1-25. The Court found it unnecessary to reach this issue. Doc. 51 at 41 n.9 (because plaintiffs showed a likelihood of success on the merits of their claim that SDCL § 22-17-5.3 is unconstitutional as applied to their intended speech, Court need not address Plaintiffs' additional causes of action and arguments).

If the Court were to reverse all its existing findings and conclusions, Section 230 by itself would justify a preliminary injunction. Although the State's brief does not address it, Section 230 remains an independent, fully briefed alternative ground supporting a preliminary injunction and denial of the State's motion to stay. Mayday relies on its previous Section 230 briefing: Doc. 4 at 25-28, Doc. 31 at 22-23, and Doc. 49 at 1-25.

### C. The State fails to show a strong likelihood of success on the merits as to Turbak

The Court carefully recounted the State's arguments that Turbak does not have standing, rejecting them. Doc. 51 at 17-19. The Court found that "the message her sweatshirt conveys is markedly similar to the message on Mayday's gas station placards—a message that the Defendants argue would violate South Dakota law,

including SDCL § 22-17-5.3." Doc. 51 at 18. The Court noted that "Defendants use the same structure as Turbak's Mayday sweatshirt to emphasize their position regarding the impermissible nature of Mayday's advertisement." *Id.* The State's previous lawsuit against Mayday showed Turbak's sweatshirt as an example of illegal speech. Doc. 51 at 6.

Turbak testified that for three reasons, the current Attorney General's representations do not assuage her fear of prosecution: she does not trust Mr. Jackley, a future Attorney General will take office in January and could take a different view, and any county's State's Attorney could prosecute her regardless of whether the present or future Attorney General did so. The Court cited authority that the State's representation as to its current intent not to prosecute was a legally insufficient defense to Turbak's request for a preliminary injunction. Doc. 51 at 19.

The State argues that Turbak, unlike Mayday, is not in the "supply chain" for abortion pills. The Court addressed and rejected this argument. Doc. 51 at 17-18. SDCL § 22-17-5.3 contains no "supply chain" limitation. The statute makes it a felony to "advertise" anything "for purposes of an unlawful abortion." Turbak's sweatshirt, even more directly than Mayday's gas station placards, promotes awareness of abortion pills specifically. Doc. 51 at 18. The State argued throughout

the case that Mayday's advertisements were necessarily "for purposes of an unlawful abortion" within the meaning of S.D.C.L. § 22-17-5.3. So Turbak's fear of prosecution is credible, being based on the words of the statute, the State's accusations in its previous lawsuit against Mayday, and its own words in this case.

The State asserts that the Court erred in failing to adopt its limiting definition of the word "advertise." Like the State's "supply chain" argument, this limiting definition is not found in the statute. The State says it "went uncontested," but that is not so: plaintiffs submitted five pages of written argument disputing it. Doc. 30 at 8-13. The Court correctly ruled that Turbak credibly fears felony prosecution by doing what the statute prohibits: wearing a sweatshirt that advertises abortion pills the same way that Mayday advertises them, namely by directly telling the public that abortion pills exist and that they are still available in South Dakota.

**D. The State's arguments as to the other stay factors fail**

The remaining stay factors are whether the State will be irreparably injured absent a stay, whether a stay will substantially injure other parties, and the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

*Irreparable injury*

The State relies on a parade of horribles that it says will occur if abortion pills are sold in South Dakota. But as the Court found, neither Mayday nor Turbak sells abortion pills. Doc. 51 at 33: "Mayday is not an abortion pill merchant and it does not sell, dispense, or distribute abortion pills." The Court recounted Dr. Giebink's testimony as to the alleged harm abortion pills cause, and that her testimony was vigorously disputed: "Through rebuttal testimony by Dr. Marvin Buehner, the Plaintiffs presented evidence supporting the efficacy of the information on Mayday's website, including that abortion pills are safe. Dr. Buehner also opined that the numbers are 'astoundingly small' for adverse events from taking abortion pills." Doc. 51 at 31.

Dr. Giebink supported her testimony only with anecdotes; Dr. Buehner supported his testimony with the FDA's nationwide 24-year study. Exhibit 32 (Mifepristone U.S. Post-Marketing Adverse Events Summary through December 31, 2024). Dr. Giebink's testimony is accurate only if adverse events somehow occur in South Dakota at a rate phenomenally greater than in the rest of the United States. The State has not attempted to suggest any theory, rational or otherwise, under

which this could be true. So the Court's choice not to rely on Dr. Giebink's testimony was reasonable.

*Substantial injury to other parties*

The State says Mayday would not be injured by a stay "because it has already agreed to not advertise in South Dakota pursuant to the terms of the agreement settling the deceptive acts and practices claim." Doc. 56 at 28. But as the Court found, the settlement agreement addressed only "Gas Station Placards" and future illegal conduct. Doc. 51 at 7. Mayday and Turbak brought this claim to be able to continue to engage in speech protected by the First Amendment after SDCL § 22-17-5.3 became effective on July 1. The preliminary injunction allows them to do so. They are doing so and will continue to do so. Any loss of their First Amendment rights for even minimal periods of time would be irreparable injury. Doc. 51 at 41, quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020). So Mayday and Turbak would be irreparably injured by a stay, because they would have to stop speaking on pain of felony prosecution during the pendency of the State's appeal.

*Public interest*

The State's "public interest" argument is the same as its irreparable injury argument. It assumes that Mayday and Turbak sell abortion pills, and apparently

relies on Dr. Giebink's anecdotes that are contradicted by a quarter-century of FDA data. The Court already said it all: "[T]he public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern." Doc. 51 at 42, quoting *Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995).

## V. Conclusion

The motion for stay argues that the Court's Order on Pending Motions was wrong on every significant issue. Yet the State supports its claims only with heightened rhetoric and retreads of already-rejected arguments. The State has not met the core legal requirement for a stay: a strong showing of likely success on the merits. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Nor has it demonstrated that the other stay factors weigh in its favor. Accordingly, its motion for stay pending appeal should be denied.

Dated: August 24, 2026 Respectfully submitted,

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel: (605) 341-4400
jim@southdakotajustice.com
Attorney for Plaintiffs

Certificate of Service

I certify that on August 24, 2026, I filed this document by CM/ECF, thereby causing automatic electronic service to be made on all other parties.

/s/ James D. Leach
James D. Leach